563 So.2d 1090 (1990)
TIMBERCRAFT ENTERPRISES, INC., Appellant,
v.
Frederick M. ADAMS and Bonnie J. Adams, His Wife, Appellees.
No. 88-3451.
District Court of Appeal of Florida, Fourth District.
June 6, 1990.
Rehearing and Certification Denied August 3, 1990.
*1091 William E. Guy, Jr., and Elizabeth Kampish, Stuart, for appellant.
Leif J. Grazi of Law Offices of Grazi & Gianino, Stuart, for appellees.
PER CURIAM.
We reverse the trial court's final judgment in the amount of $4,446 and remand for entry of a final judgment for $7,409.85, the total amount of appellant's bill for the services rendered to appellees.
Appellant, Timbercraft Enterprises, Inc., is a Florida corporation engaged in land clearing and excavation in the Martin County area. In August of 1987, Robert Hershberger, President of Timbercraft, met with appellees, Mr. and Mrs. Adams, with regard to the pre-construction site preparation and land clearing of appellees' lot located in Sewalls Point, Florida.
At the meeting with the Adamses, Mr. Hershberger inspected the lot and discussed with them the price for clearing it. He mentioned that the usual Sewalls Point lot cost between $3,500 and $4,500 to clear. Mr. Hershberger then explained that the lot belonging to the Adamses was not a usual lot in that it contained numerous Australian pines while the normal lot contained only ten to twelve trees and brush. During the visit, the three parties attempted to count the Australian pines located on the lot. Each party's count was in the range of eighty-five to ninety pines. Mr. Hershberger indicated that it would cost approximately $100 to remove each Australian pine. In proposing the $100 per Australian pine figure, Mr. Hershberger took into account the following prices: $135 per dumped load, $55 per hour for the loader, and $25 per hour for the chain saw operator. These prices were conveyed to the Adamses. The Adamses expressed their desire to have the trunks of the Australian pines left on the lot and cut up for firewood. Mr. Hershberger explained that the price would be a bit lower if the logs were not taken to the dump, but that the price would not be reduced drastically.
The parties never reduced their agreement to writing. Timbercraft commenced clearing the Adamses' property. It completed the clearing of the Adamses' lot in approximately six days. Shortly thereafter, Timbercraft submitted an itemized statement to the Adamses in the amount of $7,409.85. The Adamses allegedly had been expecting a statement in an amount less than $4,000.
On October 1, 1987, Timbercraft filed its claim of lien for $7,409.85, plus interest, in the office of the Clerk of the Circuit Court of Martin County, Florida. On October 6, 1987, the Adamses submitted a letter to Timbercraft and tendered a check in the amount of $5,250 for the work performed. The letter that accompanied the check reflected that the amount tendered was "25% over the aforesaid original price." The check was for $5,000, plus $250 Florida sales tax. Timbercraft refused the check.
On November 23, 1987, Timbercraft filed a complaint against the Adamses. Count I of the complaint sought foreclosure of a mechanic's lien, Count II sought damages related to the breach of a contract, and Count III sought damages under a theory of quantum meruit. Paragraph 16 of the complaint alleged that "A Contractor's Affidavit *1092 is not required in this matter; there are no other subcontractors or lienors." The Adamses' answer to the complaint specifically denied the allegation of Paragraph 16 and, as an affirmative defense, raised Timbercraft's failure to comply with the statutory requirements of section 713.06, Florida Statutes.
At the close of Timbercraft's presentation of its case at trial, the Adamses moved for a directed verdict. The court treated the motion as a request for an involuntary dismissal of Count I, which sought foreclosure of the mechanic's lien, on the basis that Timbercraft had failed to allege or prove that it had furnished a contractor's final affidavit at least five days prior to instituting the action. The trial court granted the motion for involuntary dismissal as to Count I of the complaint.
At the conclusion of the case, the trial court found that Timbercraft had failed to prove the express contract alleged in Count II of its complaint. The trial court then proceeded to consider the amount of recovery to which Timbercraft was entitled under its theory of quantum meruit alleged in Count III of the complaint.
At the trial, the testimony of expert witness, Mario Rastrelli, was introduced. Mr. Rastrelli had been in the excavating and land clearing business in Martin County for approximately seventeen years. Mr. Rastrelli estimated he would have charged the Adamses anywhere from $75 to $100 per tree resulting in a $8,500 figure, or $7,300 plus extras on a time and material basis. Mario Rastrelli indicated that the average profit margin in his land clearing business was 40%.
In determining Timbercraft's damages, the trial court multiplied the amount of $7,409.85, which Timbercraft requested on its lien and statement, by 40% and arrived at the sum of $2,963 as the profit portion. Subtracting that profit amount from the total bill, the court determined that Timbercraft was entitled to the total sum of $4,446 in quantum meruit.
Timbercraft's first point on appeal is that the trial court erred in ruling that profit is not a recoverable element of damages in an action based on quantum meruit. It asserts that Florida case law recognizes profit and overhead as recoverable items in a quantum meruit action. In support of its position, Timbercraft cites to cases that indicate that in determining the proper amount of recoverable damages, one must look to the reasonable value of similar services prevailing in the community. It then contends that arriving at the reasonable value of similar services in the community entails comparing the prices charged by others in the same line of business and that those prices charged by others would "assuredly embody overhead and profit."
In support of its argument, Timbercraft cites to Moncrief v. Hall, 63 So.2d 640 (Fla. 1953). In Moncrief, the Florida Supreme Court had before it a lien foreclosure case involving work done and materials furnished in the improvement of property by the removal of stumps and the raising of the property's surface by the addition of dirt. In affirming the lower court's decision, the Supreme Court stated:
It is clear to us that there was sound reason to hold that there was no arrangement for a definite price for the whole job and that the amount due was properly to be determined on the basis of quantum meruit, that is, the reasonable worth of the services at the time measured by the rate for like work prevailing in the particular community.
Id. at 642 (emphasis supplied).
We agree with Timbercraft's assertion that Moncrief is controlling here. There is expert testimony in the record which shows that the reasonable value of Timbercraft's services in the Martin County area at the relevant time was between $75 to $100 per tree, which rate included the cutting, hauling and loading of the trees. Timbercraft was entitled to recover the full amount of $7,409.85, as that amount represents a reasonable fee for the clearing of a lot containing approximately ninety trees.
We distinguish this court's decision in Ballard v. Krause, 248 So.2d 233 (Fla. 4th DCA 1971), on the basis that that case involved an owner's wrongful termination of a contract and that there was no testimony introduced at trial proving the reasonable *1093 value of the labor, services and materials actually furnished by the contractor to the property owners.
As to Timbercraft's second point on appeal, we find that the trial court did not err in dismissing Timbercraft's mechanics' lien foreclosure count on the basis that Timbercraft failed to furnish the Adamses with a contractor's final affidavit, pursuant to section 713.06(3)(d)(1), Florida Statutes, five days prior to the institution of the action. The statute makes clear that the affidavit is required "regardless of whether the contractor has any lienors working under him or not." Furthermore, even though Timbercraft asserts the nonexistence of any potential lienors, it admits that the marl delivered to the Adamses' property was purchased from a supplier. Timbercraft's speculation that the marl supplier would not have liened the Adamses' property falls short of the standard set forth by this court in Bishop Signs, Inc. v. Magee, 494 So.2d 532 (Fla. 4th DCA 1986), for excusing noncompliance with the statutorily mandated serving of the contractor's affidavit.
In Bishop Signs, this court noted that the filing of a contractor's affidavit is a condition precedent to the maintenance of a mechanic's lien foreclosure action. Noncompliance with the affidavit requirement was deemed excusable by the contractor's furnishing of sufficient factual allegations within the complaint to justify the noncompliance. In Bishop Signs, the contractor argued that the affidavit was not necessary because the project he was working on was not a large one. This court refused to accept that argument and stated that "[t]he applicable concern should be whether it is the type of contract which, by its nature, does not entail the services of subcontractors or the furnishing of labor or material by others." Id. at 534.
Applying the Bishop Signs standard to the facts of the case at hand, it seems clear that Timbercraft failed to furnish adequate reasons for failing to comply with the statutory requirement of furnishing a contractor's final affidavit. The clearing of a lot and the elevating of a lot with dirt fill is the type of job that usually entails the furnishing of labor or materials by others.
GARRETT, J., concurs.
LETTS, J., concurs in conclusion only with opinion.
GLICKSTEIN, J., concurs in part and dissents in part with opinion.
LETTS, Judge, concurring in conclusion only.
It is my view that the $7,409.85 for services rendered is properly due and owing because of the wording of the quote from the Florida Supreme Court opinion in Moncrief v. Hall.
GLICKSTEIN, Judge, concurring in part and dissenting in part.
I agree with the trial court that profit should be excluded from recovery under quantum meruit. As this court noted in Ballard v. Krause, 248 So.2d 233, 234 (Fla. 4th DCA 1971), where a cause of action is in quantum meruit, a contractor is entitled to only those damages that would put him in the same position that he was in prior to the making of the agreement with the property owner. By awarding Timbercraft the full amount of its bill, the majority is placing Timbercraft in a better position than it was in prior to contracting to clear the Adamses' lot because Timbercraft is now being awarded the profit portion of its fee. I would affirm the trial court on both points on appeal.