902 So.2d 973 (2005)
Ernest PUYA, Appellant,
v.
SUPERIOR POOLS, SPAS & WATERFALLS, INC., Appellee.
Nos. 4D04-3733, 4D04-4867.
District Court of Appeal of Florida, Fourth District.
June 8, 2005.
*974 Cindy L. Olea, David J. Valdini, and Sharon Kung of Valdini & Palmer, P.A., Fort Lauderdale, for appellant.
Adam J. Hodkin and Stephen J. Padula of Taylor, Hodkin, Kopelowitz & Ostrow, P.A., Fort Lauderdale, for appellee.
GROSS, J.
This case involves a disagreement between a homeowner, appellant Ernest Puya, and a swimming pool contractor, appellee Superior Pools, Spas & Waterfalls, Inc., arising out of a contract to construct a swimming pool on the homeowner's property. We reverse the foreclosure of the lien for failure of the contractor to comply with a statutory condition precedent and reduce the amount of damages due to a failure of proof at trial.
Payment for the job was due in four separate progress payments. Puya, who paid only the first two installments, later reversed the second progress payment, which he had charged to his credit card. Superior ceased construction before completing the pool. Puya hired a new contractor to finish the job without making any further payments to Superior.
Superior recorded a claim of lien on Puya's property and filed suit. Following some amendments, the operative pleading *975 contained three counts: breach of contract, quantum meruit, and foreclosure of the lien. Puya answered, asserting, among other affirmative defenses, that Superior failed to satisfy all conditions precedent to the lien foreclosure because it did not provide Puya with a contractor's final payment affidavit pursuant to section 713.06(3)(d)1., Florida Statutes (2003). Puya also counterclaimed for breach of contract, fraudulent lien, and slander of title.
The case proceeded to a non-jury trial. Superior presented no testimony concerning lost profits or the reasonable cost of the services it provided. Superior's president testified that the second and third progress payments were approximately $7,000 each and that Puya's reversing the charge for the second payment and missing the third caused Superior $14,000 in damages. Additionally, Superior offered an exhibit into evidence which indicated that the cost of the pavers Superior purchased was $726.
Without explanation, the trial court found for Superior on its breach of contract and foreclosure claims, awarded $7,000 in compensatory damages (subject to a $350 dollar set-off for damage to Puya's home), plus pre-judgment interest, costs, and attorney's fees, and granted the right to foreclose the lien on Puya's property.
Puya first challenges the propriety of the judgment allowing Superior to foreclose on its contractor's lien. Section 713.06(3)(d)1. requires a contractor to give the owner a "final payment affidavit" when "the final payment under a direct contract becomes due the contractor." The statute states that "[t]he contractor shall have no lien or right of action against the owner for labor, services, or materials furnished under the direct contract while in default for not giving the owner the affidavit." § 713.06(3)(d)1.
This statutory language establishes that timely delivery of a final payment affidavit is a condition precedent to a lawsuit seeking to foreclose on a construction lien. See Holding Elec., Inc. v. Roberts, 530 So.2d 301, 303 (Fla.1988); Bell v. Renar Dev. Co., 811 So.2d 780, 780 (Fla. 4th DCA 2002); Timbercraft Enter., Inc. v. Adams, 563 So.2d 1090, 1091 (Fla. 4th DCA 1990). Where a contractor fails to timely furnish a final payment affidavit, the owner is generally entitled to dismissal of the contractor's foreclosure suit. See Privas v. Brisson Custom Homes, Inc., 817 So.2d 983, 984 (Fla. 4th DCA 2002); Bishop Signs, Inc. v. Magee, 494 So.2d 532, 533 (Fla. 4th DCA 1986); Paulk v. Peyton, 648 So.2d 772, 773 (Fla. 1st DCA 1994).
Section 713.06(3)(c)5., makes the requirements of section 713.06(3)(d)1. applicable to this case. Section 713.06(3)(c)5. provides that even "[i]f the contract is terminated before completion, the contractor shall comply with [the final payment affidavit requirements of] subparagraph (d)1." Contrary to Superior's arguments, the statute required it to furnish a final payment affidavit to preserve its right to foreclose on its lien. See Hutton v. 3-L Enters., Inc., 431 So.2d 277, 278-79 (Fla. 5th DCA 1983) (holding that, under section 713.06(3)(c)5., a contractor must comply with the final payment affidavit requirements set forth in 713.06(3)(d)1., even where the contract was terminated before completion and the owner's breach concerned non-payment of an installment). We therefore reverse that aspect of the judgment allowing foreclosure of the contractor's lien.
We next address the amount of damages awarded under the breach of contract count.
"[T]he measure of damages for breach of a partially performed construction contract is, `either quantum meruit or *976 the contractor's lost profit together with the reasonable cost of labor and materials incurred in good faith in the course of partial performance of the contract.'" Nico Indus., Inc. v. Steel Form Contractors, Inc., 625 So.2d 1252 (Fla. 4th DCA 1993) (quoting Brooks v. Holsombach, 525 So.2d 910, 911 (Fla. 4th DCA 1988)). A contractor may prove lost profit damages "by showing the total cost and expenses of labor, services and materials necessary to perform the contract and then deducting that sum from the contract price." Ballard v. Krause, 248 So.2d 233, 234 (Fla. 4th DCA 1971). A contractor may establish quantum meruit damages by showing "those damages that would put him in the same position that he was [in] immediately prior to the making of the agreement, in which case the contractor's measure of damages is the reasonable value of the labor and services rendered, and materials furnished." Id. Because contractors must prove their damages under one of those methods, this court has recognized that evidence concerning the "[p]ercentage of completion is not competent evidence to prove damages for breach of a partially performed construction contract." Nico Indus., Inc., 625 So.2d at 1252; see also Teca, Inc. v. WM-TAB, Inc., 726 So.2d 828, 830 (Fla. 4th DCA 1999) (en banc); First Atl. Bldg. Corp. v. Neubauer Constr. Co., 352 So.2d 103, 104-05 (Fla. 4th DCA 1977).
Superior offered little evidence of its damages in this case. It provided no evidence of its lost profits. The paver invoice for $726 was competent proof of quantum meruit damages (i.e., the reasonable value of a furnished material), but that was the only evidence offered under that theory. This $726 was subject to the $350 set-off, leaving only $376 in damages.
The testimony of Superior's president concerning the percentage of the pool that was completed and not paid for was insufficient to establish damages in this case. The unsworn assertion of Superior's lawyer during closing argument equating the amount set forth in the claim of lien with "the amount of work that had been performed" was also not proper evidence of damages. See Leon Shaffer Golnick Adver., Inc. v. Cedar, 423 So.2d 1015, 1017 (Fla. 4th DCA 1982) (holding that counsel's unsworn representations are not evidence and cannot be used as the basis for factual determinations in the absence of stipulation).
We reverse that portion of the judgment allowing foreclosure of the contractor's lien. We reduce the damages awarded to $376 and remand to the circuit court for entry of an amended final judgment with a recalculation of prejudgment interest.
STEVENSON and SHAHOOD, JJ., concur.