The order of the lower court which this court is asked to review was entered in a proceeding below wherein the plaintiff Lehigh Structural Steel Company, petitioner here, sought to foreclose its lien for materials alleged to have been furnished for the construction of three buildings — one on each of three separate parcels of land, hereinafter referred to as Parcels A, B and C. The bill of complaint, as amended, joined as parties defendant the fee simple title owners of said property, the three corporate lessees of same, the general contractor employed by said lessees to construct the buildings, and the holder of escrow funds deposited for the construction of the buildings.
The facts, as alleged by the amended bill of complaint, are in substance as follows:
The three parcels of land are owned by the respondents Betty Roney Fitzpatrick and her husband, and are under 99-year leases to three corporations, as follows: Parcel A to the Glenwood Corporation; Parcel B to the Fremont Corporation; and Parcel C to the Pan American Lincoln Road Arcade, Inc. The leases, it is alleged, "called for" the erection of a building by each of said corporate lessees on its respective parcel, and required the deposit in escrow by the lessee of sufficient money to pay for the construction of same. The three corporate lessees engaged the same general contractor, to wit, Joseph Langner, Inc., to construct the buildings, and the general contractor entered into a contract with the plaintiff-petitioner for the fabrication of steel for the three buildings. The steel for all three buildings was specially fabricated by plaintiff, but only that fabricated for the building on Parcel A was actually delivered and incorporated into the structure. The remainder is stored at Allentown, Pa., "awaiting shipping instructions," as alleged in the Claim of Lien filed by plaintiff, or, as alleged in the Notice of Intention to Claim a Lien, "delivery of further materials covered by said contracts is ready to be made and furnished at any date upon which the contractor shall comply with the terms and provisions and conditions of said contracts." The amounts claimed to be due and for which the liens were sought to be foreclosed are approximately as follows: Parcel A, $5,000; Parcel B, $9,000; and Parcel C, $57,000. *Page 337 
The bill of complaint attached as exhibits a copy of a Notice of Intention to Claim a Lien directed by the plaintiff to the Fremont Corporation, the Glenwood Corporation, and the Fitzpatricks (but not to the Pan American Lincoln Road Arcade, Inc.), as well as a copy of a Claim of Lien which was duly filed and recorded in the Public Records of Dade County, Florida. Neither the Notice of Intention to Claim a Lien nor the Claim of Lien described the property designated herein as Parcel C, (which, as has been noted, was leased to the Pan American concern), although the Claim of Lien included a claim for the materials in the amount of approximately $57,000 designated as for "Building C."
The holder of the escrow funds, namely, the National Title Company, filed its Answer in the cause, alleging that escrow funds in the amount of $52,000 had been deposited with it for the construction of a building on Parcel A, of which almost $5,000 remained; and that a similar amount had been deposited with it for the construction of a building on Parcel B, of which $2,700 remained; that no other escrow funds were now held by the said defendant, the National Title Company.
The other defendants filed motions to dismiss the bill of complaint; and, upon hearing on said motions, the lower court dismissed the bill as to Parcels B and C, on the ground that the plaintiff had not "furnished or incorporated or stored on the site of the premises or delivered at the site of the premises any of the material involved in the claim" and that "regardless of any common law action which the plaintiff might have against the contractor for breach of contract, there is no statutory lien which could be held against the owner of the fee simple title, who is not alleged to have entered into the contract or guaranteed the contract personally." It is this order which this court is asked to review.
The petitioner has posed the following question for adjudication by this court:
"Does a material-man have a lien for structural steel that is completely fabricated for a building although it is not delivered or erected, but is stored awaiting shipping instructions from the general contractor?"
The respondents, Betty Roney Fitzpatrick and E.J. Fitzpatrick, her husband, have re-phrased the question, as follows:
"Can a materialman have a lien upon the lessor's interest in Florida land for materials which are specially fabricated for a building pursuant to a contract between the materialman and general contractor to be erected upon the land by the lessee, pursuant to a contract between the lessee and the general contractor, when the lessor has not contracted directly with the materialman and when the materials have never been delivered upon the land and are still held by the materialman in Pennsylvania?"
No brief was filed on behalf of the corporate lessees, the general contractor, or the National Title Company.
The pertinent provisions of our Mechanics' Lien Law, being Chapter 84, Florida Statutes, 1941, F.S.A. are as follows:
Section 84.02:
"A contractor, sub-contractor, materialman or laborer shall * * * have a lien on the real property improved for any money that shall be owing to him for * * * materials furnished in accordance with his contract and with the direct contract * * *."
Section 84.01:
"`Furnish materials' means supply materials which are incorporated in the improvement * * *; or specially fabricate materials for incorporation in the improvement; * * *. The delivery of materials to the site of the improvement shall be prima facie evidence of incorporation of such materials in the improvement."
Section 84.03(2):
"* * * such liens shall extend to, and only to, the owner's right, title or interest existing at the time of the visible commencement of operations * * *. When an improvement is made by a lessee, in accordance with a contract between such *Page 338 
lessee and his lessor, liens shall extend also to the interest of such lessor."
Section 84.01:
"`Owner' means the owner of real property or any interest therein who enters into a contract for the improvement of such real property * * *."
Section 84.31:
"The liens provided by this chapter may be enforced against the real property specified in the claim of lien and which is subject thereto and against any person liable for the debt upon which the lien is founded."
At the outset, it may be stated that the bill of complaint has failed to allege sufficient facts to show the existence of a lien against Parcel C, since it affirmatively appears that only Parcels A and B were "specified in the claim of lien." Section 84.31, supra. Strict compliance with the statute is required in order to acquire a lien upon the property. Buker v. Webster,140 Fla. 471, 191 So. 835.
As to Parcel B, however, the question is not so easily resolved.
The steel for the building on Parcel B was specially fabricated for such building and, it is to be presumed, is not generally suited for nor readily adaptable to use in any other building. While there is some conflict in the decisions, in our opinion the better view is that the real property proposed to be improved by specially fabricated materials is subject to a lien for such materials when their use or delivery is prevented by the act or direction of the owner of such real property and without the fault of the materialman. See 36 Amer.Juris., Mechanics' Liens, Section 74, page 61; 57 C.J.S., Mechanics' Liens, § 42, page 533; Grainger Co. v. Johnson, 6 Cir., 286 F. 833, 33 A.L.R. 320-321.
This is in accord with the holding in Franklinville Realty Company v. Arnold Construction Co., 5 Cir., 120 F.2d 144, 148, relied on by petitioner in its brief. In that case, Arnold Construction Company, general contractors, brought a suit against Franklinville Realty Co. to enforce a contractor's lien against certain lands in Palm Beach County, Florida. The contract was a direct contract between the owner of the fee and the general contractor, and the federal court rightly held that
"Arnold Construction Company had authority to let sub-contracts and purchase materials and is entitled to recover for the labor and services performed, and materials furnished, and for materials specially fabricated for inclusion, but not installed, if such materials are being held awaiting instructions of the owner."
As in the Franklinville case, most of the decided cases on this point involve a suit by a materialman or contractor in privity with the owner of the real property to enforce a lien for specially fabricated materials against such property. In the instant case, however, the lien is sought to be enforced by a materialman not in privity with the owner of the property, nor is it claimed that the use or delivery of the materials was prevented by the act or direction of the owner. We have here a situation where A leases to B who contracts with C who orders specially fabricated materials from D, who seeks to enforce his lien against the real property. Therefore, the Franklinville case and other similar cases are not of much assistance to this court in resolving the questions propounded here.
The order of the court below dismissed the cause as to Parcels B and C, which in effect dismissed the defendant corporate lessees of said parcels, as well as the owner-lessors of same. The petitioner assigned as error such order, and now asks us to decide whether there is "a lien" for specially fabricated materials which are not delivered, but are being held "awaiting shipping instructions from the general contractor." We feel, therefore, that it is incumbent upon us to determine whether there is (1) a lien against the leasehold interest of the corporate lessee, and (2) a lien against the fee simple interest of the lessor.
For the purpose of the following general discussion, the term "owner" may be deemed to apply to a lessee who contracts *Page 339 
for the improvement of the leased property, as well as to a fee simple title holder who so contracts, since Section 84.01, Florida Statutes, 1941, F.S.A. defines "owner" as "the owner of real property or any interest therein who enters into a contract for the improvement of such real property."
We are cognizant of the rule that the Mechanics' Lien Law should be construed so as to afford to mechanics and laborers the greatest protection compatible with justice and equity. Hendry Lumber Co. v. Bryant, 138 Fla. 485, 189 So. 710. And we have previously noted and approved the rule, followed in many jurisdictions, that the real property to be improved is subject to a lien for materials specially fabricated for such improvement under a contract directly with the owner of the realty when such materials are not used or delivered by the act or direction of the owner. There are strong equitable reasons for holding the owner's property subject to a materialman's lien in such cases.
But the underlying equity of a mechanic's lien relates to a direct addition to the substance of the thing to which the lien attaches; and it is not, in the opinion of this court, either just or equitable to burden the owner's interest in the realty with a lien for materials which never became a part of such realty, either actually or constructively by delivery on the premises, when the reason for such non-delivery is not shown to have been the act or direction of the owner or his agent. The statute is to be construed not only to protect the materialman, but also to protect the owner of property; and the "specially fabricated materials" doctrine should be kept within reasonable bounds so as to operate justly, equitably, and equally upon the materialman on the one hand, and the owner of the property on the other.
The question, as propounded by petitioner in its brief, states that the materials are being held "awaiting shipping instructions from the general contractor." We do not think the general contractor can be considered the agent of the owner, within the meaning of the Mechanics' Lien Law, so as to impute to the owner the general contractor's failure to issue shipping instructions to the materialman, which failure was apparently due to a disagreement between the general contractor and the materialman (the petitioner here) as to the terms of their own particular subcontract. This is apparent from the statement in the Notice of Intention to Claim a Lien filed by petitioner, that
"* * * delivery of further materials covered by said contracts is ready to be made and furnished at any date upon which the contractor shall comply with the terms and provisions and conditions of said contract."
We do not mean to say that the owner can absolve his property from a lien for specially fabricated materials by the device of directing his general contractor not to accept same, or by otherwise preventing delivery through instructions issued to the general contractor who, in turn, issues them to the materialman. In such case, the owner would thereby expressly constitute the general contractor his agent for that particular purpose.
No such allegations are made in the bill of complaint in the instant case. It is not claimed that the delivery of the materials was prevented by the act or direction of the owner, nor is it claimed that the general contractor was acting under express instructions of the owner.
It is our opinion, therefore, that the bill of complaint failed to allege sufficient facts to show a valid lien against the ownership interest in Parcel B, and that the leasehold interest of the corporate lessee (an "owner" within the meaning of the statute, as heretofore shown) is not subject to the lien under the allegations of the bill. This applies equally to Parcel C, although the lien against such parcel has been heretofore held invalid for failure to comply with the statutory requirements for perfecting said lien.
As to the liability of the fee simple interest of the Fitzpatricks — the owner-lessors — to the lien, our statute, Section 84.03(2), Florida Statutes, 1941, F.S.A. provides that *Page 340 
"When an improvement is made by a lessee, in accordance with a contract between such lessee and his lessor, liens shall extend also to the interest of such lessor."
Moreover, it is generally held, and we think rightly, that a lessor who requires his lessee to construct an improvement on the leased property may in certain instances thereby constitute the lessee his agent for that purpose within the contemplation of Mechanics' Liens statutes so as to burden the lessor's estate with a mechanic's lien. 79 A.L.R. 964; 163 A.L.R. 994.
However, since we have held that the bill of complaint fails to establish the liability of the corporate lessees for the materialman's lien, it necessarily follows that the corporate lessees have not bound the fee simple interest of the owner-lessor under the agency theory set forth above. We deem it unnecessary, therefore, to decide whether or not in the instant case the bill of complaint alleged sufficient facts to establish, as a matter of law, the existence of an agency relationship between the Fitzpatricks, as the owner-lessors, and their corporate lessees.
What we have said heretofore as to the allegations necessary to bind the "owner's" interest to the lien for specially fabricated undelivered materials applies equally to the owner-lessor interest, as well as the leasehold interest. There were no such allegations.
It is our opinion, therefore, that the bill of complaint failed to show that the interest of the owner-lessors in Parcel B was subject to the lien claimed by petitioner. This also applies equally to Parcel C.
There is no merit to petitioner's contention that the lower court should have retained jurisdiction over Parcels B and C so that the court "could enter a money judgment or decree for the amount due against the party liable therefor," since Section 84.29, Florida Statutes, 1941, F.S.A., applies only in cases where claimant has established a right to enforce his lien as to at least part of the amount claimed. Shad v. Arnow, 155 Fla. 164,19 So.2d 612.
For the reasons set forth above, we find no error in the order of the lower court dismissing the bill of complaint as to Parcels B and C, and the writ of certiorari is therefore
Denied.
ADAMS, C.J., and TERRELL and THOMAS, JJ., concur.