75 So.2d 298 (1954)
SURF PROPERTIES, Inc., Appellant,
v.
MARKOWITZ BROS., Inc., Appellee.
Supreme Court of Florida. Division A.
October 26, 1954.
*299 Anderson & Nadeau, Miami, and Courshon & Courshon, Miami Beach, for appellant.
Williams, Salomon & Katz, Miami, for appellee.
ROBERTS, Chief Justice.
This is an appeal from a final decree entered by the lower court in a suit to enforce a general contractor's lien for improvements allegedly made to defendant's leasehold estate, under the circumstances set forth below. The plaintiff, appellee here, was awarded a lien in the amount of $2,911, plus interest, and the costs were required by the decree to be divided equally between the parties.
Stated as briefly as possible, the facts pertinent to this opinion are as follows: The defendant and the plaintiff in September, 1948 were engaged in negotiations for the construction by the plaintiff, as general contractor, of a swimming pool on defendant's leasehold premises. A written contract was submitted to the defendant by the plaintiff but was never signed by defendant. The plaintiff alleged, however, that an oral agreement was entered into by the parties and that the plaintiff placed orders for specially fabricated materials and equipment for the pool at the request of the defendant and pursuant to the oral agreement. During this same month, the defendant's permit to build the pool was revoked by the City, and the defendant advised the plaintiff to hold up on the shipping of the equipment until Spring. The defendant so notified its subcontractors or materialmen.
After the defendant, through litigation, was able to procure a new permit for the building of the pool, the defendant, according to the plaintiff, requested the plaintiff in September, 1949 to "re-figure" the job on different plans and specifications, which plaintiff agreed to do, provided it was reimbursed for the cost of the equipment ordered under the previous oral agreement. The defendant's position on this aspect of the matter is that there was no previous oral agreement, and that it simply requested the plaintiff to submit a bid on the new plans and specifications. It also denies that it requested the plaintiff to order the special materials and equipment for which a lien is sought. There is no doubt, however, that the defendant refused to reimburse the *300 plaintiff, as requested, for the equipment allegedly ordered by the plaintiff for the defendant. The defendant awarded the contract for the pool to another, and the construction of the pool was finally commenced in September of 1949 by the other contractor.
The plaintiff thereupon, in October 1949, filed a Claim of Lien for the "specially fabricated" materials and equipment allegedly ordered at plaintiff's request, and for overhead and loss of profit, in the total amount of some $11,000, and suit to enforce such lien was instituted shortly thereafter. During the early stages of the suit, it developed that the plaintiff had overstated its claim in the amount of some $3,000, so that the total amount claimed was some $8,000, including a charge for "overhead" of $521.44 and "loss of profits" of $2,553.29. The overhead charge was computed on the basis of 10 per cent of the net cost to plaintiff of the materials ordered on behalf of defendant, to wit, $5,214.41, and the "loss of profits" was figured at 10 per cent of the contract price of some $25,000. It also developed that, during the pendency of the litigation, the plaintiff disposed of all the equipment covered by its Claim of Lien except that ordered from the Graver Tank & Mfg. Co. ("Graver" hereafter), and it voluntarily limited its claim for materials to the amount owing for the Graver equipment (and for which it had not paid Graver at the time of suit) in the amount of $2,911. Graver's bill, in the words of the plaintiff, was a "so-called `cancellation charge', Graver having salvaged the equipment and credited Markowitz Bros. for all sums over $2,911." In addition to this amount, plaintiff claimed a lien for overhead costs of $521.44 and loss of profits of $2,553.29, computed as above noted.
The Special Master found that "although there was no written contract, the said order was given by the Defendant, Surf Properties, Inc., to the Plaintiff, and the said order was subsequently cancelled by said Defendant. The Master finds also that the greater portion of the said order required prefabrication and was specially designed for this particular swimming-pool." He also found that the plaintiff was entitled to a lien for "specially prefabricated materials duly ordered for incorporation in the improvement to be made," under the authority of Lehigh Structural Steel Co. v. Langner, Inc., Fla., 43 So.2d 335. He found, however, that "In the case at bar, the Plaintiff was only charged $2,911.00 for the prefabricated materials, inasmuch as the balance of the same were salvaged. As a consequence, the Plaintiff is only entitled to a lien in the same sum of $2,911.00."
As to the amounts for overhead and loss of profits for which a lien was claimed, noted above, the Special Master found that these should not be allowed, because, as stated by him, "There is no testimony in the record from which the Master could accurately determine the total cost to the Plaintiff of full performance of the contract. Without this, neither overhead costs nor profits can be ascertained with a reasonable degree of certainty. In addition, the Master is of the opinion that the overall equities in this case do not permit allowance of loss of overhead and/or profits." He thereupon recommended denial of this portion of the Claim of Lien.
The Master's Report and recommendations were confirmed in all respects by the Chancellor, and a final decree in accordance therewith was entered. Both parties are dissatisfied with the decree. The defendant contends that the lower court erred in awarding any amount at all to plaintiff as a lien against its property, and the plaintiff argues that it was error to charge it with one-half of the costs of the litigation, and also that the decree should have awarded it a lien for the items of overhead and loss of profits included in its Claim of Lien.
From what has been said, it is apparent that, in the proceedings below, the Special Master and the Chancellor inadvertently applied the rules applicable in a suit for breach of a contract, rather than those applicable in a suit to enforce a contractor's lien. Our Mechanics' Lien Law, Chapter 84, Florida Statutes 1953, F.S.A., gives a lien only for work done and materials *301 furnished, so that overhead and profits, as separate items, are not within the purview of the Act. See 40 C.J., Mechanics' Liens, p. 77, Sec. 56; 57 C.J.S., Mechanics' Liens, § 49; Withrow v. Wright, 215 Ark. 654, 222 S.W.2d 809; Rosebud Lumber & Coal Co. v. Holms, 155 Neb. 688, 53 N.W.2d 82.
There is some authority for the proposition that in a suit by a subcontractor to enforce a lien for work and labor, overhead and profit may be included in estimating the reasonable value of work and labor actually furnished by such subcontractor, where the contractor is prevented from fulfilling a building contract by the owner, Fuhler v. Gohman & Levine Const. Co., Mo., 142 S.W.2d 482; and in computing the amount due a contractor under a cost-plus contract in a suit to enforce a contractor's lien, House v. Fissell, 188 Md. 160, 51 A.2d 669, and see, also Timber Structures v. C.W.S. Grinding & Machine Works, 191 Or. 231, 229 P.2d 623, 25 A.L.R.2d 1358, on the question of including overhead and profit in estimating the reasonable value of labor required to specially fabricate materials (as distinguished from the supplying of a finished product).
But here, the plaintiff has supplied no supervision or other work on the improvement, unless placing orders for the equipment could be so considered; and it had nothing to do with the fabrication of the materials in question. This was done by Graver or Graver's materialman, and we are unable to see how plaintiff's overhead and profit could, in any manner or wise, enter into the reasonable value of such equipment  and "reasonable value" is the criterion for measuring the amount for which a lien may be claimed by the plaintiff under the circumstances here. See Golub v. DeLinardy Flooring Co., Inc., Fla., 44 So.2d 75; Central Refrigeration Inc. v. Monroe, 259 Wis. 23, 47 N.W.2d 438; Kendall Lumber & Coal Co. v. Roman, 120 Ind. 368, 91 N.E.2d 187; Dybvig v. Willis, 59 Idaho 160, 82 P.2d 95, 98; 36 Am.Jur., Mechanics' Liens, § 164 p. 110.
Again, the lower court must have been thinking about a breach of contract suit when it accepted Graver's "cancellation charge" as the reasonable value of the Graver equipment  which, as noted, is the only equipment for which a lien is here sought. While Graver's "cancellation charge" might have been admissible on the question of damages in a suit by plaintiff against defendant for breach of contract, it is not even prima facie evidence of the reasonable value of the materials allegedly going into the improvement of the defendant's property in the face of the testimony of plaintiff's witness, Mr. Markowitz, that the Graver material still on hand and being held for defendant was worth only from $500 to $800.
Moreover, the Graver "cancellation charge" was broken down into various items, as follows: Materials, $976 (although the listed "materials" appear to be finished products); Labor and Overhead, $995; A.S. & P. (Administration Overhead, Selling Cost and Profit), $696; and an item of $228 labeled "Commission to Boddie". It is clear that at least a portion of the items listed under "Materials" in the cancellation charge has been used in other jobs by plaintiff, so that even if Graver should be entitled to some portion of its overhead and profit, as going into the reasonable value of the materials over and above the actual cost of same (which is not decided), there is nothing in the record to show what percentage thereof is chargeable to the particular items still in plaintiff's hands, awaiting delivery to the defendant, the reasonable value of which must be the extent of the lien to which plaintiff is entitled.
And, finally, it was found by the Master, and admitted by plaintiff, that as a matter of fact none of the equipment referred to in Graver's cancellation charge was actually fabricated by Graver  it was supplied by Graver's subcontractors or materialmen and shipped by them directly to plaintiff. It is not clear, then, how any charge for labor could be apportioned to these particular items. And the appellant's contention that it was error to award the plaintiff *302 a lien based solely on the "cancellation charge" of Graver must be sustained.
But we think there was a much more fundamental error in the decree appealed from, and that is on the question relating to whether the materials for which a lien is claimed were actually "specially fabricated," within the meaning of our statute.
Our statute, Section 84.02, Florida Statutes 1953, F.S.A., gives a lien for "labor or services performed or materials furnished". Section 84.01, ibid., says that "`Furnish materials' means supply materials which are incorporated in the improvement * * or specially fabricate materials for incorporation in the improvement; * * *." The items of equipment which appear to have been still in the hands of the plaintiff at the time of the final hearing were as stated in its letter to the defendant in which it reduced its claim to $2,911, "the Barton Rate of Flow Indicator with accessories, the 4" cast iron flow valve and one box of miscellaneous items, all of which were a part of the Graver order". While it may be assumed that these items were specially ordered by plaintiff from Graver for defendant's job, this does not mean that they were specially fabricated.
All of the decided cases which we have noted show clearly that materials which are "specially fabricated" for an improvement include only materials which are "not generally suited for nor readily adaptable to use in" a like improvement, Lehigh Structural Steel Co. v. Langner, Inc., supra, 43 So.2d 335. Thus, as shown in the annotation in 33 A.L.R. at page 320, in Grainger & Co. v. Johnson, 6 Cir., 286 F. 833, 33 A.L.R. 315, the material involved, and for which a lien was granted, was fabricated steel specially prepared for a building and which would have been little more than junk if not used for that particular building; in Berger v. Turnblad, 98 Minn. 163, 107 N.W. 543, the materials were special designs, models, and casts to be used in placing ornamental plastering in a house, and which were not fitted for use elsewhere; and in Howes v. Reliance Wire-Works Co., 46 Minn. 44, 48 N.W. 448, the material was a special heavy wire inclosure specially constructed to fit an elevator shaft in plaintiff's building.
As to the items still in plaintiff's hands, listed above, there is nothing in the evidence to contradict the assertion of the defendant's witness  an expert in the field of pool design, who prepared the plans and specifications for defendant's pool  that all the equipment specified for the pool was standard equipment and stock items of the manufacturers who supplied the particular equipment. The most that can be said is that some of the equipment required assembling before shipment. But that, in our opinion, is not sufficient to bring such within the meaning of "specially fabricated", as used in Section 84.01, supra.
It must be remembered that the purpose of statutes such as our Mechanics' Lien Law is to charge the land for the labor and materials going into an improvement thereon, and thus actually enhancing the value of the land; and the provisions of Section 84.01, supra, respecting "specially fabricated" materials, is but a recognition of the exception to this rule (followed by some courts even in the absence of a special statutory provision) that it would be inequitable to free the land from the burden of the lien for materials specially designed for an improvement to such land, even though not actually incorporated therein, where the materialman is without fault. In other words, where the materials specified for an improvement of a particular property are peculiar to it, and not "run-of-the-mill," the land, in equity, should stand good for the materials which would not have been "fabricated" were it not for the unusual characteristics of the improvement proposed to be made thereon, even though the materials were not actually used because of the fault of the owner of the land.
There was nothing unusual or peculiar about the specifications for defendant's pool. The items, although in some instances requiring assembly from other stock items, were standard equipment for *303 pools. Most of the equipment ordered by plaintiff for defendant's pool was either diverted by plaintiff's subcontractors to other orders or was used by plaintiff in building other pools in the area. The fact that plaintiff, as is contended, could have used cheaper equipment in the other pools is irrelevant to the question of whether the particular items ordered for defendant's pools were "specially fabricated". There being nothing in the record sufficient to contradict the clear evidence that the equipment remaining in plaintiff's hands was standard equipment and "readily adaptable to use in" other pools, it must be held that plaintiff has failed to prove that the materials were "specially fabricated" for defendant's improvement. This being so, the plaintiff's Claim of Lien must fail, and it must recover, if at all, in a suit at law for breach of contract.
The defendant-appellant has made other attacks on the decree appealed from, some of which are not without merit; but we will not discuss them here since it is unnecessary and would unduly lengthen this opinion.
Our decision also disposes of the questions here argued by plaintiff-appellee. For the reasons above stated, the lower court did not err in refusing to include in plaintiff's lien its claim for overhead and loss of profits; and, in the absence of an award of a lien for some amount, there is no basis for the awarding of such damages as the plaintiff might have proved in the instant suit, as authorized by Section 84.29, Florida Statutes, F.S.A., since that statute only applies "in cases where the claimant contractor has established the right to enforce his lien as to at least a part of the amount claimed." Shad v. Arnow, 155 Fla. 164, 19 So.2d 612, 613.
Accordingly, the decree appealed from should be and it is hereby
Reversed.
TERRELL, SEBRING and MATHEWS, JJ., concur.