650 So.2d 120 (1995)
Terrell MARTIN, Appellant,
v.
JACK YANKS CONSTRUCTION CO., Appellee.
No. 94-406.
District Court of Appeal of Florida, Third District.
February 1, 1995.
Rehearing Denied March 8, 1995.
Brooks & Sipos and Andrew Sipos, Coral Gables, for appellant.
Neustein & Neustein and Frederick Neustein, Miami Beach, for appellee.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
NESBITT, Judge.
Homeowner Terrell Martin seeks reversal of the final judgment which determined that she had breached a contract with Jack Yanks Construction Company (Yanks), denied her claim that she was entitled to seek punitive damages for what she argued was a fraudulent lien Yanks had placed on her home, and denied her claim for attorney's fees. We agree with the homeowner on each of these three issues.
After Hurricane Andrew, Martin discussed with Jack Yanks the possibility of Yanks doing necessary post-hurricane repairs on Martin's home. A "proposal" was signed by Martin which provided only that Yanks was to return the home to its condition "prior to the incident [hurricane]" and containing the statement:
Final price for restoration work to be worked out with Liberty Mutual Insurance Company and the general contractor.
*121 The agreement contained no other provisions to outline the parties' rights and obligations and in fact left solely to Yanks' discretion whether Yanks would come to an agreement with the insurer. Martin claimed that Yanks did no repairs and played no part in obtaining the $107,208.60 insurance check she ultimately received. After her receipt of the insurance check, Martin informed Yanks that she was not going to have the house rebuilt. Yanks claimed that this had occurred after the company had paid for and pulled the required permits and done emergency repairs. Martin denied that any such work had been done. On December 7, 1992, Yanks filed a claim of lien for the full insurance check amount, $107,208.60. On January 6, 1994, the cause was tried non-jury.
Notwithstanding the fact that the proposal made no such provision, the trial judge found that the parties had entered into a contract based upon the cost to repair, including a 20% profit to Yanks. The court further found that Martin breached the contract by revoking it and refusing to permit Yanks to begin work. The court determined that the damages for such a breach amounted to Yanks' lost profits plus Yanks' costs expended on certain building permits.
In Martin's favor, the trial judge found that the lien filed on her property by Yanks was invalid and awarded damages to Martin pursuant to section 713.31, Florida Statutes (1993). In an amended final judgment, the court awarded Martin interest on $25,000, the loss resulting from the delay of the sale of her house due to the lien. However, the trial court denied Martin's claim that she was entitled to seek punitives based on the improper lien. Finally, the trial judge concluded that each party should bear their respective attorney's fees and costs.
On the first issue, Martin argues the parties' agreement failed for indefiniteness. We agree.
Considering the absence of a definite price, as stated in Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974), citing Corbin on Contracts, Vol. 1 (1963) § 97 at 424:
If the parties provide a practicable, objective method for determining this price or compensation, not leaving it to the future will of the parties themselves, there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. (Emphasis added.)
See Zell v. Cobb, 566 So.2d 806 (Fla. 3d DCA 1990), review denied, 577 So.2d 1331 (Fla. 1991); Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498 (1927) (several writings at issue did not constitute binding contract, even where deposit paid, since there was no meeting of minds on essential terms).[1] Here, in the absence of a definite price or a means of determining a price not left solely to the contractor's discretion, the proposal failed as a binding agreement.
Second, the trial court erred in barring Martin's claim for punitive damages. It was clear that the homeowner could not be responsible to the contractor for the full $107,208.60 lien on the property. Section 713.05, Florida Statutes (1993) states in part:
[A] contractor who complies with the provisions of this part shall, subject to the limitations thereof, have a lien on the real property improved for any money that is owed to him for labor, services, materials, or other items required by, or furnished in accordance with the direct contract.
Recovery for overhead and profit as separate items are not within the purview of the lien law. Surf Properties, Inc. v. Markowitz Bros., Inc., 75 So.2d 298 (Fla. 1954); Broderick *122 v. Overhead Door Co., 117 So.2d 240 (Fla. 2d DCA 1959); 1 Rakusin, Florida Construction Lien Manual, Ch. 3, p. 51 (1988). The asserted lien was in no way the result of a contractor's miscalculation or overestimation, but rather was a lien for non-lienable items in an amount far beyond anything that could have possibly been owed to the contractor.
As section 713.31 clearly provides:
(c) An owner against whose interest in real property a fraudulent lien is filed, or any contractor, subcontractor, or sub-subcontractor who suffers damages as a result of the filing of the fraudulent lien, shall have a right of action for damages occasioned thereby. The action may be instituted independently of any other action, or in connection with a summons to show cause under s. 713.21, or as a counterclaim or cross-claim to any action to enforce or to determine the validity of the lien. The lienor who files a fraudulent lien shall be liable to the owner or the defrauded party in damages, which shall include costs, clerk's fees, a reasonable attorney's fee for services in securing the discharge of the lien, the amount of any premium for a bond given to obtain the discharge of the lien, interest on any money deposited for the purpose of discharging the lien, and punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due.
Under the foregoing authority and the circumstances of this case, the homeowner was entitled to the award of punitive damages as a matter of law.
Finally, with no contract in place, neither party could recover attorney's fees for the contract action. David v. Richman, 568 So.2d 922, 924 (Fla. 1990). Martin, however, does have a viable claim for those costs and attorney's fees associated with the removal of the fraudulent lien. See § 713.31(2)(c), Fla. Stat. (1993).
For the foregoing reasons, the judgment under review is reversed with directions.
NOTES
[1] See also David v. Richman, 528 So.2d 25 (Fla. 3d DCA 1988) (no meeting of minds existed on material elements of contract for sale of real estate which did not include legal description of property and which left material portions of contract blank); Theocles v. Lytras, 518 So.2d 936 (Fla. 3d DCA 1987) (contract held unenforceable where parties failed to agree on all material and essential terms, including closing date and handling of certain business liabilities); Northland Capital Corp. v. Silver, 735 F.2d 1421 (D.C. Cir.1984) (contract to purchase securities unenforceable where no agreement on terms was reached and parties contemplated that closing was necessary to consummate transaction); Coyne v. Chatham Phenix Nat. Bank & Trust Co., 155 Misc. 656, 281 N.Y.S. 271 (N.Y.City Ct. 1935) (employees' signing of bank's offer to sell stock held not binding agreement where there was no absolute promise on part of bank to allot stock to every person subscribing); Restatement (Second) of Contracts, § 33 comment a. (1981).