892 So.2d 1092 (2004)
Dean J. SHARRARD, Appellant/Cross-Appellee,
v.
Reginald LIGON and Mendee Ligon, Appellees/Cross-Appellants.
No. 2D03-3348.
District Court of Appeal of Florida, Second District.
November 5, 2004.
*1094 Joseph G. Thresher and John J. Thresher of Thresher, P.A., Tampa, for Appellant/Cross-Appellee.
Bradley M. Bole and Penelope T. Bryan of Rahdert, Steele, Bryan, Bole & Reynolds, P.A., St. Petersburg, for Appellees/Cross-Appellants.
WALLACE, Judge.
This is a construction lien law case. Dean J. Sharrard (the Contractor) built a residence for Reginald Ligon and Mendee Ligon (the Owners) pursuant to a cost-plus contract. The trial court entered a final judgment foreclosing the Contractor's amended claim of lien for a portion of the monies that he claimed were due him. The Contractor appeals the trial court's disallowance of his claims for attorney's fees and prejudgment interest. The Owners cross-appeal the trial court's refusal to find that the amended claim of lien was fraudulent and therefore unenforceable. The Owners also complain of the trial court's denial of their counterclaim for damages resulting from the filing of the amended claim of lien. Because the undisputed evidence in the record establishes that the Contractor willfully included nonexistent expenses in his calculation of the amount stated to be due in the amended claim of lien, we conclude that the amended claim of lien was fraudulent. Therefore, we reverse the final judgment of foreclosure and remand for further proceedings. Because of our disposition of the cross-appeal, we need not address the Contractor's appeal.

Facts, Procedural History, and Final Judgment
In February 1998, the Contractor entered into a contract with the Owners for the construction of a residence in St. Petersburg, Florida. Pursuant to the contract, the Contractor agreed to provide services as a contractor and construction manager for the project. The Owners agreed to pay the Contractor "at a rate of contractor[']s costs of goods [and] services plus 10% as a profit to the contractor." The contract specifically required the Contractor to "carry workmen's [sic] compensation, public liability, and property damage insurance." The Contractor began work on the project in February 1998 and concluded work in August 1999.
Because the parties had entered into a cost-plus contract, the amount paid by the Contractor for goods and services for the project was critical to determining the amounts owed by the Owners, both as the job progressed and at completion. See Persinger v. Estate of Tibbetts, 727 So.2d 350 (Fla. 5th DCA 1999). Therefore, accurate record keeping and accounting for costs by the Contractor was essential to the proper administration of the parties' *1095 cost-plus contract. Unfortunately, the Contractor failed to generate and maintain accurate records for his costs and expenses on the project. The trial court found that the Contractor's record keeping was "grossly inadequate."
When the Contractor completed his work on the project in August 1999, the parties had disputes about both the amount the Contractor claimed was due and the quality of the construction. On August 25, 1999, the Contractor filed a claim of lien for $72,250. On September 10, 1999, the Owners served a request for a sworn statement of account on the Contractor pursuant to section 713.16, Florida Statutes (1999), requesting a written statement of the Owners' account showing the nature of the labor and services performed, the materials furnished, and the amount paid on account to date on the project. On October 8, 1999, the Contractor responded to the request with an affidavit. The Contractor attached to the affidavit a document titled "Independent Accountant's Compilation Report" prepared by his accountant. In the affidavit, the Contractor stated that he intended to amend his claim of lien to increase the amount to $158,843.62. The Contractor subsequently filed an amended claim of lien stating that the total value of his work on the project was $678,587.31 of which $158,843.62 remained due.
The Contractor subsequently filed a three-count complaint in the trial court against the Owners for the foreclosure of the amended claim of lien, breach of contract, and quantum meruit. The Owners answered the complaint and alleged numerous affirmative defenses, including the defense that the amended claim of lien was fraudulent within the meaning of section 713.31(2)(a). The Owners also filed a counterclaim seeking damages for a fraudulent lien, slander of title, and breach of contract. Thereafter, the parties conducted extensive discovery. The matter was ultimately tried without a jury in a trial that lasted seven days.
The trial court found that the Contractor's cost of constructing the residence was $523,281, "and that with a 10% profit the total amounts to $575,204.00."[1] The trial court also found that the Owners' prior payments totaled $504,704, leaving a balance of $70,500 due to the Contractor pursuant to the contract. The trial court rejected the Owners' claim for a setoff against the Contractor on account of work that the Owners contended was defective. The trial court also found that the lien was not fraudulent. Thus the Owners recovered nothing on their counterclaim. Based upon these findings, the trial court entered a final judgment foreclosing the amended claim of lien in the amount of $70,500.

The Owners' Claim That the Lien Was Fraudulent
On the cross-appeal, the Owners argue that the trial court erred in failing to find the amended claim of lien to be fraudulent and unenforceable under section 713.31(2)(a) and (b). The Owners also contend that the trial court erred in failing to award them damages on the fraudulent lien claim pursuant to section 713.31(2)(c).[2] *1096 The trial court rejected the Owners' claim that the Contractor's amended claim of lien was fraudulent based upon the following finding: "The court finds that under the unusual circumstances presented, including the fact that the amended lien figure was based at least in part upon advice of counsel, the lien was not fraudulent." In addition, in connection with the disallowance of the Contractor's claim for attorney's fees, the trial court also found that the controversy was "essentially a payment dispute occasioned by [the Contractor's] poor record keeping."
Of the five grounds the Owners asserted in the trial court in support of their claim that the amended claim of lien is fraudulent, they raise two on cross-appeal. First, the Owners contend that the Contractor's inclusion in the lien amount of $21,689.48, including a ten percent profit, for premiums for workers' compensation coverage was fraudulent because the Contractor had no workers' compensation coverage in effect during the period of the construction project. Second, the Owners claim that the approximate amount of $13,600 the Contractor included in the lien amount as a "salary" for his own management services is fraudulent because it was duplicative of the ten percent profit to which the Contractor was entitled under the contract. The parties have devoted substantial attention in the trial court and before this court to the difference in the roles of a "construction manager" and a "project manager" and whether the Contractor could properly bill the Owners for the cost of his services as the latter under their cost-plus contract. We need not venture into this particular legal thicket because the Owners' first ground based on charges for the nonexistent workers' compensation premiums is dispositive of the fraudulent lien claim.

Analysis
Section 713.31(2)(a) defines a "fraudulent lien" as:
Any lien asserted under this part in which the lienor has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lien or in which the lienor has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.
See Castiello v. Sweetwater Homes of Citrus, Inc., 843 So.2d 1019, 1020 (Fla. 5th DCA 2003). Section 713.31(2) makes a fraudulent lien unenforceable and gives the owner a claim for compensatory damages, costs, attorney's fees, and punitive damages against a contractor who files a fraudulent lien. M.B. Hayes, Inc. v. Tak Chin Choi (In re M.B. Hayes, Inc.), 305 B.R. 361, 366 (Bankr.M.D.Fla.2003); Martin v. Jack Yanks Constr. Co., 650 So.2d 120, 121-22 (Fla. 3d DCA 1995). "However, a minor mistake or error in a claim of lien, or a good faith dispute as to the amount due does not constitute a willful exaggeration that operates to defeat an otherwise valid lien." § 713.31(2)(b); see Delta Painting, Inc. v. Baumann, 710 So.2d 663, 665-66 (Fla. 3d DCA 1998) (Cope, J., dissenting) (explaining the origin and purpose of this aspect of section 713.31(2)(b)).
The Contractor's answer to the charge that he willfully exaggerated the amount of his amended claim of lien by including the cost of nonexistent workers' compensation *1097 coverage is twofold. First, the Contractor points out that he relied on the advice of counsel in connection with the preparation of the amended claim of lien and the affidavit sworn to by him and served on the Owners. Second, he contends that he acted pursuant to a mistaken but good faith belief that he actually had workers' compensation insurance coverage. We will consider each of the Contractor's arguments separately.
Pursuant to section 713.31(2)(a), a claim of lien that overstates the amount claimed is not fraudulent unless the exaggeration was made "willfully." See Vinci Dev. Co. v. Connell, 509 So.2d 1128, 1132 (Fla. 2d DCA 1987); Scott v. Rolling Hills Place, Inc., 688 So.2d 937, 939 (Fla. 5th DCA 1996). A lienor's consultation with counsel prior to filing a claim of lien tends to establish that the lienor acted in good faith. Therefore, in determining whether a lienor has willfully exaggerated the amount stated to be due in a claim of lien, the lienor's consultation with independent counsel prior to filing the claim of lien is a factor to be considered along with other pertinent factors. See William Dorsky Assocs., Inc. v. Highlands County Title & Guar. Land Co., 528 So.2d 411, 412 (Fla. 2d DCA 1988); Stevens v. Site Developers, Inc., 584 So.2d 1064, 1065 (Fla. 5th DCA 1991). However, reasoning by analogy to the treatment of the "advice of counsel" defense in malicious prosecution cases, we believe that a lienor can rely on consultation with counsel prior to filing the claim of lien as evidence of good faith only in the event of a full and complete disclosure of the pertinent facts to the attorney from whom the advice is sought before the lienor acts on the advice. Cf. Glass v. Parrish, 51 So.2d 717, 721 (Fla.1951); Paulk v. Buczynski, 106 So.2d 100, 102 (Fla. 2d DCA 1958).
In this case, one of the attorneys who had participated in the preparation of the amended claim of lien testified that in his initial meeting with the Contractor, he had advised him concerning the necessity for accuracy in the preparation of the amended claim of lien and related documents.[3] The attorney also testified that he had warned the Contractor that in the event "there is something very iffy, it could color or taint the case." Despite these cautionary words, the Contractor insisted that he had workers' compensation coverage. The attorney testified further that his law firm relied on the accuracy of the Contractor's representations concerning his workers' compensation coverage and other matters in the preparation of the amended claim of lien. The law firm's advice to the Contractor that he could include the cost of his workers' compensation coverage in calculating the amount stated to be due in the amended claim of lien was based on the Contractor's inaccurate representation that he had workers' compensation coverage in effect during the period of the construction of the residence for the Owners. Under these circumstances, in analyzing whether the Contractor willfully exaggerated the amount of the amended claim of lien, the Contractor's consultation with an attorney prior to filing the amended claim of lien is not entitled to any legal weight because the Contractor did not disclose all of the pertinent facts to his attorneys.
The Contractor also argues that in including the workers' compensation insurance expense in the amount of the amended claim of lien, he acted in good faith *1098 under a mistaken belief that he had coverage. The Contractor contends that pursuant to section 713.31(2)(b), his conduct was a minor mistake or error not constituting a willful exaggeration that would defeat his lien claim. We are unpersuaded by the Contractor's argument because it is not supported by the competent, substantial evidence in the record. First, as we have already noted, upon inquiry by his attorneys about the existence of coverage pursuant to their investigation in preparation for the filing of the amended claim of lien, the Contractor insisted that he had coverage. Although the Contractor's assurances are consistent with a belief that he had coverage, they also establish that at the very least he failed to make appropriate inquiry before responding, either by reviewing his insurance records or consulting his insurance company or agent. Second, in the affidavit he served on the Owners with the amended claim of lien, the Contractor said:
[The Owners'] assertion that I did not carry worker's [sic] compensation for the subcontractors is similarly unfounded. I provided worker's compensation insurance through my general liability insurer for every subcontractor that worked on the [Owners'] home who did not have their own insurance coverage.
This statement is further evidence of the Contractor's failure to make appropriate inquiry concerning his workers' compensation coverage before filing the amended claim of lien. Third, the Contractor repeatedly billed the Owners for workers' compensation premium expense at the rate of $34.80 per $100 of payroll. Since he had no coverage, one must wonder how the Contractor arrived at the very specific rate he charged for workers' compensation premium expenses. In any event, the specific and repetitive nature of the billings to the Owners belies the notion that the Contractor's inclusion of the workers' compensation premium expense in the amount of the amended claim of lien was an inadvertent error or a minor miscue. Finally, the workers' compensation premium expenses were not a minor portion of the amount of the amended claim of lien. At $21,689.48, it represented approximately fourteen percent of the $158,843.62 amount of the amended claim of lien. Thus the inclusion of the workers' compensation premium expense in the amount of the amended claim of lien was not a "minor mistake or error" within the meaning of section 713.31(2)(b).
Furthermore, the Contractor did not support his claim that he acted in good faith pursuant to a mistaken belief that he had workers' compensation coverage with a plausible explanation, e.g., that his existing coverage was cancelled by mistake or that a notice of cancellation was misdirected, leaving him without the required insurance but unaware of a lapse in coverage. On the contrary, the evidence at trial established that at the time he began the project for the Owners, the Contractor had last had workers' compensation coverage in 1996. This was more than one year before he began the construction of the residence for the Owners. Although the Contractor apparently had liability coverage, he had no workers' compensation insurance in effect during the entire eighteen-month period of the project. The only explanation offered by the Contractor for his belief in coverage was his prior experience of having his payroll audited by his insurance company to determine the correct amount of his premium for workers' compensation insurance and his expectation that he would be audited again to determine his liability for workers' compensation insurance premiums attributable to payroll expense on the project for the Owners and other customers.
The Contractor's explanation is inherently implausible. It is true that payroll audits to determine the correct premium *1099 are a feature of workers' compensation insurance policies. See Amos v. State, 711 So.2d 1197, 1197-98 (Fla. 2d DCA 1998). Nevertheless, workers' compensation carriers only perform payroll audits for businesses that have purchased coverage. Because he had no workers' compensation insurance in effect during the period of the construction project for the Owners, the Contractor could not have reasonably believed that a subsequent audit would determine his liability for premium expense, thereby creating coverage when none was in effect. The undisputed evidence in the record does not support the Contractor's claim that he included the nonexistent workers' compensation premium expense in the amount of the amended claim of lien in good faith pursuant to a mistaken belief that he had coverage. The Contractor's bare assertion that he acted in good faith was an unsupported legal conclusion, not evidence.
A lienor's exaggeration of the amount of a claim of lien by the inclusion of "amounts which are not recoverable under the contract, are not authorized, or are arbitrary" renders the lien fraudulent and unenforceable. Skidmore, Owings & Merrill v. Volpe Constr. Co., 511 So.2d 642, 644 (Fla. 3d DCA 1987); see also M.B. Hayes, Inc., 305 B.R. at 367-68; Martin, 650 So.2d at 121-22; Hobbs Constr. & Dev., Inc. v. Presbyterian Homes of the Synod of Fla., 440 So.2d 673, 674 (Fla. 1st DCA 1983). In this case, the Contractor padded his expenses on a cost-plus contract with premium charges for nonexistent workers' compensation insurance. The use of padded accounts on a cost-plus contract to inflate the amount of a claim of lien is fraudulent. See Alsheimer v. Palmer, 119 Fla. 335, 161 So. 559 (1935) (decided under the common law applicable before the enactment of the construction lien law).
A review of the undisputed evidence on the workers' compensation premium expense issue leads to the conclusion that the Contractor either willfully exaggerated the amount of the amended claim of lien or compiled the lien with such willful and gross negligence as to amount to a willful exaggeration. This makes the amended claim of lien fraudulent and unenforceable. The trial court's finding to the contrary was clearly erroneous. See Bradley v. Waldrop, 611 So.2d 31, 32 (Fla. 1st DCA 1992) (explaining that the clearly erroneous standard of review applies to a finding of the trial court that rests upon undisputed evidence).[4]

The Relief Granted
Pursuant to section 713.31(2)(b), the fraudulent nature of the Contractor's amended claim of lien is a complete defense to its enforcement. Accordingly, on the Owners' cross-appeal, we reverse the final judgment foreclosing the Contractor's amended claim of lien and remand for further proceedings. On remand, the Contractor will be entitled to money damages against the Owners under the contract in the amount of $70,500, the amount previously determined to be due by the trial court. See Luther Walker Trucking Co. v. *1100 Fernandez, 285 So.2d 667 (Fla. 2d DCA 1973). However, the Contractor's claim for damages will be subject to a setoff for any amounts that may be determined to be due the Owners on their claims for damages for the filing of the fraudulent lien pursuant to section 713.31(2)(c).
Because we have reversed the final judgment foreclosing the amended claim of lien, we do not address the arguments raised by the Contractor on his appeal concerning his right to interest on the lien. On remand, the trial court may consider the Contractor's claim for prejudgment interest on the amount due under the contract. In addition, the trial court must revisit the parties' claims for attorney's fees and costs as the prevailing party under section 713.29 and under the contract. The Owners concede that they have waived their claim for slander of title.
We recognize that our decision to reverse on the cross-appeal is likely to bring about another round of contested hearings in a controversy that has already seen more than its fair share of litigation. We express our hope that the parties will consider the possible benefits of a negotiated settlement of their dispute before they go back to the trial court for the next round.
Reversed and remanded.
ALTENBERND, C.J., and THREADGILL, EDWARD F., Senior Judge, Concur.
NOTES
[1] There is an arithmetical error in the trial court's calculations. The Contractor's cost of $523,281 plus a ten percent profit of $52,328 yields a total cost to the Owners of $575,609, which is $405 more than the trial court's total of $575,204. Neither of the parties has addressed this discrepancy in their submissions to this court.
[2] Section 713.31(2)(c) provides, in pertinent part:

The lienor who files a fraudulent lien shall be liable to the owner or the defrauded party in damages, which shall include court costs, clerk's fees, a reasonable attorney's fee for services in securing the discharge of the lien, the amount of any premium for a bond given to obtain the discharge of the lien, interest on any money deposited for the purpose of discharging the lien, and punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due.
[3] The law firm that prepared the amended claim of lien on behalf of the Contractor also filed the lien foreclosure action but subsequently withdrew. Another firm represented the Contractor at the final hearing and on this appeal.
[4] The Contractor contends that mandatory affirmance on the cross-appeal is required because the Owners, when making the record on cross-appeal, did not order the transcription of the testimony of every trial witness. The Owners challenged the Contractor to point to any witness whose untranscribed testimony might be pertinent to the fraudulent lien issue, which was one of many issues litigated in the lengthy trial. The Contractor has not alleged the materiality of the omitted testimony.

After careful consideration of the record before us and the parties' arguments, we find no merit to the Contractor's position. The Contractor's cases, Nelson v. State, 85 So.2d 832 (Fla.1956), and Damkohler v. Damkohler, 336 So.2d 1243 (Fla. 4th DCA 1976), each apparently involving a single issue at trial and on appeal, are inapposite.