NORTHCUTT, Judge.
 

 Select Auto Management, Inc., sued Saverio Castelli for damages stemming from Castelli’s alleged tortious interference with Select’s business relationships. After a bench trial, the court ruled in Select’s favor and awarded $152,223 in damages. Castelli challenges the sufficiency of the evidence to prove his liability and the damages award. His argument concerning liability is well taken, and we reverse. Accordingly, we need not address the other issues raised.
 

 In 2004, Castelli leased a parcel of land to Robert Melvin on which Melvin conducted a used car business, Car-Mel. At around the same time, Melvin entered into a business relationship with Select, a company that purchased customer financing agreements at a discount from used car dealers. Select purchased financing agreements from Melvin under two different arrangements. Under the first, Select bought the car purchasers’ finance agree
 
 *53
 
 ments and collected the loan payments directly from the purchasers, who were instructed to mail their payments to Select. Under the second plan, Melvin collected the loan payments from the purchasers and then sent Select its share of the sums received. The purchasers mailed their payments to Car-Mel, or they came to the dealership to pay. Melvin also assigned a number of financing agreements to Castelli in lieu of rent. He accomplished this by placing Castelli’s name on car titles as the first lienholder. Apparently, he collected the amounts owed to Castelli.
 

 Melvin’s business began to fall apart in June 2005. Select learned that Car-Mel was having financial problems, and on June 10, 2005, it terminated Melvin’s right to collect payments under the second plan. By the end of that month, Select had sent letters to all Car-Mel’s customers whose financing agreements had been purchased under the second plan, instructing them not to make payments to the dealership but rather to send the payments to Select.
 

 Also in June 2005, while Castelli was on vacation, Melvin closed the business and left. When Castelli returned sometime between June 27 and 29, he found the car lot and the business office empty. In form letters dated June 27, 2005, Castelli advised car purchasers to send their payments to him. He claimed to have contacted only purchasers of the cars on which he held liens.
 
 [1]
 
 His letters were not addressed to any specific person and used the salutation “Dear Sir/Madam.” No evidence established that any car purchaser actually received one of these form letters.
 

 In early July 2005 an agent of Select visited the Car-Mel lot. He found Castelli in the office and gave him a list of 105 cars on which Select had purchased the financing. He told Castelli not to accept payments from the purchasers of those vehicles. But the agent also testified that he discussed stopping by to pick up any payments that the vehicle owners made to Castelli. In fact, he stated that at one point Castelli told him to come by the dealership and he would give the agent a check for any payments he had collected. Castelli testified that he thought the agent was asking him to assist in collecting Select’s payments.
 

 In any event, Castelli continued to accept payments from Car-Mel customers through the month of July and into early August. He admitted that he did not check any list or ledger to see who might be entitled to these payments. On August 19, 2005, Select told him directly and through a letter to his attorney to stop accepting any payments. The letter contained a list of 134 vehicles on which Select had purchased the financing agreements. Castelli testified that he stopped accepting any payments on August 13, 2005, and Select presented no evidence disputing this assertion.
 

 In order to show that Castelli tortiously interfered with its business relationships, Select was required to prove:
 

 1. The existence of a business relationship;
 

 2. Castelli’s knowledge of the relationship;
 

 3. Castelli’s intentional and unjustified interference with the relationship; and
 

 4. Select’s damages as a result of the interference.
 

 
 *54
 

 See Tamiami Trail Tours, Inc. v. Cotton,
 
 463 So.2d 1126, 1127 (Fla.1985);
 
 Fiberglass Coatings, Inc. v. Interstate Chem., Inc.,
 
 16 So.3d 836, 838 (Fla. 2d DCA 2009). Select’s evidence was sufficient to meet prong one of its cause of action. In an attempt to meet prong two, it introduced the two lists of its customers given to Castelli on July 5, 2005, and to his lawyer on August 19, 2005, in order to prove that Castelli was aware of specific relationships Select had with the car purchasers. Select also presented testimony showing that Castelli was present at a meeting early in 2005 when Melvin explained his financing arrangements with Select.
 

 But Select presented evidence of Castel-li’s interference with only one specific relationship with a car purchaser, a Mr. Led-better, and that evidence failed to show either that Castelli knew about that specific relationship or that his interference was intentional. A representative of a servicing agency used by Select testified that Ledbetter came to his office on August 19, 2005, angry that the agency had repossessed his truck when he was current in his payments. Ledbetter had complained several times before that the agency had not credited him for payments he had made to Car-Mel. The representative accompanied Ledbetter to the former Car-Mel dealership to confront Castelli. He and Ledbetter went over the payment amounts Ledbetter had made and Castelli gave Ledbetter his money back.
 

 Ledbetter’s name did not appear on the list of accounts given to Castelli on July 5, but it was on the list given to his lawyer on August 19. No evidence established when Ledbetter made the disputed payments to Castelli, but they were obviously made before August 19, the date he and the servicing agent met with Castelli. Thus, Select failed to prove that at the time Castelli accepted the payments, he was on notice that Select had a business relationship with Ledbetter.
 

 Select presented additional testimony, from the servicing agent and from one of Select’s owners, that other car purchasers had complained that they had made payments to Castelli but had not been credited for the payments by Select. Select also introduced a copy of Castelli’s June 27th form letter, with no names or addresses, but it offered no proof that the letter was sent to any of the names on Select’s customer lists. Another letter, sent to a specific Car-Mel customer and dated July 3, 2005, was also placed in evidence, but it had been returned to Castelli as undeliverable. Also introduced were copies of checks Castelli provided Select in discovery. These checks showed that Castelli had reimbursed three car purchasers— whose names all appeared on Select’s July 5, 2005, list — for payments made at the dealership. But none of these purchasers testified, and Select did not establish when their payments were made to Castelli.
 

 In its oral findings, the circuit court found that Castelli had express knowledge of Select’s customers and his lack of authority to collect from those customers “no later that August 19 of 2005.” As proof of Castelli’s intentional interference with Select’s customers, the court cited the letters Castelli had sent directing car purchasers to make payments to him at the dealership. Of course, as previously noted, the form letter was dated June 27 and the returned letter was dated July 3, both of which were before Select’s agent presented Castelli with the first list of Select’s customers. Further, Select never established that the letters actually were sent to or received by any of its finance customers. In short, the letter evidence simply did not support the court’s finding, and as such, the finding was clearly erroneous.
 
 See Sharrard v. Ligon,
 
 892 So.2d 1092,
 
 *55
 
 1099 (Fla. 2d DCA 2004) (explaining that clearly erroneous standard is used to review trial court’s finding of fact based on undisputed evidence, such as the dates of the letters in this case);
 
 see also Universal Beverages Holdings, Inc. v. Merkin,
 
 902 So.2d 288, 290 (Fla. 3d DCA 2005) (noting that in a bench trial, the judge’s findings should not be disturbed on appeal unless they are clearly erroneous).
 

 The court also found that Castelli’s acceptance of payments from Ledbetter and the three other customers, all of which were returned to them, established his intentional interference with Select’s relationships. As noted above, the payments from Ledbetter had to have been received before Select informed Castelli that he was a customer. That admitted acceptance of money cannot prove intentional interference because Select failed to prove that Castelli had knowledge of the relationship at the time he took the money. Select presented no evidence from the other three customers about when they made their payments. Again, then, Select did not present sufficient proof that Castelli interfered with known customers.
 

 Select proved the existence of its business relationships with car purchasers, but it entirely failed to prove which, if any, relationships Castelli intentionally interfered with.
 
 See Ethan Allen, Inc. v. Georgetown Manor, Inc.,
 
 647 So.2d 812, 815 (Fla.1994) (concluding, in tortious interference action, that the plaintiff did not identify customers with whom it had an agreement with which the defendant interfered);
 
 see also Sarkis v. Pafford Oil Co.,
 
 697 So.2d 524, 526 (Fla. 1st DCA 1997) (affirming the dismissal of a complaint alleging tortious interference when the complaint failed to identify the customers who were the subject of the alleged interference).
 

 We reverse the judgment in this case and remand with directions to enter judgment for Castelli.
 

 CASANUEVA, C.J., and LaROSE, J., Concur.
 

 [1]
 

 . According to Castelli, Melvin tracked the payments he received in three separate ledgers: one for collections he was making for Select, one for collections made for the cars on which Castelli held liens, and one for Melvin’s collections on the financing agreements that he still owned.