565 So.2d 349 (1990)
ROBERT M. SWEDROE, ARCHITECT/PLANNERS, A.I.A., P.A., Appellant,
v.
FIRST AMERICAN INVESTMENT CORPORATION, Appellee.
No. 88-3239.
District Court of Appeal of Florida, First District.
July 6, 1990.
*350 James D. Wing, of Fine, Jacobson, Schwartz, Nash, Block & England, Miami, for appellant.
Bruce A. McDonald and Edward P. Fleming, of McDonald, Fleming & Moorhead, Mary Esther, for appellee.

ON MOTION FOR REHEARING
JOANOS, Judge.
Upon consideration of the motion for rehearing and appellee's response, we grant the motion for rehearing, withdraw the opinion filed December 7, 1989, and substitute the following:
Robert M. Swedroe (Swedroe) appeals an order granting summary final judgment in favor of First American Investment Corporation (First American), on Swedroe's crossclaim seeking to foreclose an architect's lien. The issues raised are: (1) whether the services performed by Swedroe during the period from May to July 1987 were part of the original 1984 contract, so that the architect's lien was timely filed; and (2) whether First American has demonstrated a willful exaggeration of lien. We reverse and remand for further proceedings.
The Swedroe firm was the architect for the Surfside Condominium project in Destin. Commonwealth Mortgage Corporation was the mortgage lender on the project. On July 2, 1987, the developer, Beachfront Development I, Ltd. (Beachfront), gave a deed in lieu of foreclosure to First American, a subsidiary of Commonwealth. On October 20, 1987, Commonwealth filed a foreclosure suit against Beachfront and other lienors, including the Swedroe firm. On November 30, 1987, the Swedroe firm filed its answer and a crossclaim against First American "to establish and foreclose a mechanic's lien," alleging, among other things, that 
6. Plaintiff has performed all conditions precedent to the relief demanded and the last supervisory work was furnished by plaintiff on July 29, 1987.
7. For the plans and supervisory services there remains due and unpaid to plaintiff by owner and its predecessor in title the sum of $142,532.57. Owner and its predecessor have failed and refused to pay any part thereof despite due demand.
On April 18, 1988, the Swedroe firm moved for summary judgment against First American. Robert Swedroe's supporting *351 affidavit alleged that the Swedroe firm fulfilled all conditions precedent to establishing its claim under the mechanic's lien law, and was entitled to a judgment foreclosing its architect's lien. The affidavit further alleged that Swedroe's last work for the owner pursuant to the contract was furnished at the request of the owner on July 29, 1987, and that claim of lien was recorded timely on August 6, 1987.
The parties recorded their agreement by use of the standard American Institute of Architects (AIA) form agreement between owner and architect, with deletion of inapplicable sections. The original contract was dated October 24, 1983. Under the terms of the contract, the Swedroe firm was required to provide services through: (1) the construction documents phase; (2) certain aspects of construction administration through the construction phase; and (3) additional services upon request at rates of compensation specified in the agreement. Under the additional services section of the contract, the Swedroe firm was required to provide services "if authorized or confirmed by the Owner," to be paid for by the owner as provided in the agreement, in addition to the compensation for basic services. The additional services relevant to this appeal which the Swedroe firm was called upon to provide included:
1.7.10 ... interior design and other similar services required for or in connection with the selection, procurement or installation of furniture, furnishings and related equipment.
1.7.16 ... services made necessary by the default of the Contractor, or by major defects or deficiencies in the Work of the Contractor, or by failure of performance of either the Owner or Contractor under the Contract for Construction.
1.7.20 Preparing to serve or serving as an expert witness in connection with any public hearing, arbitration proceeding or legal proceeding.
Through July 29, 1987, the Swedroe firm did, in fact, provide various services under the additional services provision of the contract. One of the services rendered at the owner's request was a review of the mechanical and electrical work on the project. This review was performed by Swedroe's consulting engineers, for which the engineer consultants submitted a bill for $5,188.87, reflecting fifty-six hours of work. Also at the request of the owner, the Swedroe firm spent seventy hours preparing for and giving deposition testimony with regard to pending arbitration between the owner and its general contractor. This deposition testimony and the engineering inspection and report are the services that took place within the ninety day limitation period of recordation of the claim of lien.
The Swedroe firm routinely obtained written confirmations of the owner's directives for additional services, pursuant to the additional services provision of the contract. Twenty-nine of these written confirmations were entered into in connection with the Surfside project, after execution of the initial base contract. Seven of the confirmations related to interior design services pursuant to Section 1.7.10 of the contract, and were executed by the owner and Swedroe/YDE Design Associates, rather than the Swedroe architectural firm. The claim for design services represents $26,936.73 of the total $142,532.57 claim. During the course of the contract, the Swedroe firm credited the owner's account in the amount of $26,000.00, which represented a down payment on two condominium units at the project. Subsequently, the credit was cancelled, because the owner did not convey the condominiums.
On July 13, 1988, First American moved for summary judgment, alleging as grounds therefor that the depositions of officers of the Swedroe firm demonstrated that the claim of lien upon which the crossclaim was based was fraudulent, in that part of the sum claimed did not relate to any work done under Chapter 713, Florida Statutes. The motion further alleged that Swedroe had impermissibly consolidated sums allegedly due under numerous contracts, some of which were not with the Swedroe firm. In its supporting memorandum, First American contended that the contract and subsequent twenty-nine written confirmations for additional services constituted separate, independent contracts, *352 and that Swedroe was required to file separate claims of lien as to each contract that was partially unpaid. First American also urged that interior design services furnished by Swedroe/YDE could not be consolidated with the Swedroe lien claim, and that because the $26,000.00 credit for the failed condominium purchase constituted a novation, Swedroe could not claim a credit for this amount. In addition, First American asserted that the $26,000.00 credit and the $26,936.73 due for design services constituted a deliberate, willful exaggeration and fraud which negated the entire claim of lien.
In the order of December 8, 1988, the trial court awarded summary judgment in favor of First American, thereby dismissing Swedroe's claim of lien. The basis of the trial court's ruling was that the time had long expired for filing a lien when Swedroe filed his crossclaim, and that the work performed in 1987 by the Swedroe firm was not sufficient to revive the claim under Chapter 713. The order expressly states that in entering final summary judgment, the court did not address the question of exaggeration of the claim or of numerous claims being filed in one action.
Under the provisions of the mechanic's lien statute, an architect is entitled to the protection of a lien to secure payment of services he or she has performed toward improvement of real property or in connection with a specific parcel of real property. The applicable provision, section 713.03, Florida Statutes (1987), provides:
(1) Any person who performs services as architect, landscape architect, interior designer, engineer, or land surveyor, subject to compliance with and the limitations imposed by this part, shall have a lien on the real property improved for any money that shall be owing to him for his services in preparing plans, specifications, or drawings used in connection with improving the real property or for his services in supervising any portion of the work of improving the real property, rendered in accordance with his contract and with the direct contract.
(2) Any architect, landscape architect, interior designer, engineer, or land surveyor who has a direct contract and who in the practice of his profession shall perform services, by himself or others, in connection with a specific parcel of real property and subject to said compliances and limitations, shall have a lien upon such real property for the money owing to him for his professional services, regardless of whether such real property is actually improved.
(3) No liens under this section shall be acquired until a claim of lien is recorded. No lienor under this section shall be required to serve a notice to owner as provided in s.713.06(2) or an affidavit concerning unpaid lienors as provided in s.713.06(3).
The time for recording such claim of lien is set forth in section 713.08(5), Florida Statutes, which states in relevant part:
The claim of lien may be recorded at any time during the progress of the work or thereafter but not later than 90 days after the final furnishing of the labor or services or materials by the lienor; ...
The contract for architectural services at issue in this case was a direct contract between the Swedroe firm and the owner.[1] The services performed by the Swedroe firm and its consulting engineers within ninety days of filing the claim of lien were services as an expert witness performed under the "Additional Services" provisions of the contract, and an engineering inspection to check for compliance with the design drawings. Therefore, the narrow issue for our resolution on this point is whether the additional services performed within the limitation period were in fact lienable services.
The question whether the provision of services or materials has taken place within the statutory limitation period is "a question of fact to be resolved by the trier of fact." Wolford v. Sapp, 448 So.2d 1113, 1114 (Fla. 1st DCA 1984). See also Finn v. *353 Schneider-Richter & Associates, 343 So.2d 646 (Fla. 3d DCA), cert. denied, 352 So.2d 171 (Fla. 1977). The test for determining whether the nature of work performed is within the contemplation of the mechanic's lien law is whether the work was performed (1) in good faith, (2) within a reasonable time, (3) in pursuance of the terms of the contract, and (4) necessary for a "finished job." Century Trust Company of Baltimore v. Allison Realty Company, 105 Fla. 456, 141 So. 612, 617 (1932); Wolford v. Sapp, 448 So.2d at 1114; Aronson v. Keating, 386 So.2d 822, 823 (Fla. 4th DCA 1980); York Corporation v. Brock, 405 F.2d 759 (5th Cir.1969).
The determination that services performed or materials furnished are within the contemplation of the mechanic's lien law for purposes of the limitation period, will depend upon the circumstances of each particular case. The salient question found by the courts called upon to consider this issue seems to be whether the challenged services or materials were related directly to the property, or were merely incidental to it. For example, in Morris & Esher, Inc. v. Olympia Enterprises, Inc., 200 So.2d 579, 582 (Fla. 3d DCA 1967), the court held that expenditures for permits were lienable. This determination was predicated on the court's finding that the expenditures were pursuant to the terms of the direct contract, and presumptively essential to improvement of the property. Similarly, in Viscount Construction Company, Inc. v. Dorman Electrical Supply Co., Inc., 68 Md. App. 362, 511 A.2d 1102 (Md. App. 1986), an Underwriter's Laboratory (UL) certification was found absolutely essential when viewed in relationship to the whole contract, in that a certificate of completion could not be issued without the UL certification. The certification was therefore a lienable service within the intendment of the limitation period. On the other hand, in Cross State Development Company v. Indepco Construction Company, Inc., 346 So.2d 127 (Fla. 1st DCA 1977), this court held that storage of a piece of machinery at the job site does not constitute the furnishing of services or labor within the intendment of section 713.05.
Application of the pertinent statutory provisions and governing legal principles to the instant case demonstrates that the Swedroe firm had a direct contract with the owner. Furthermore, the contested services, i.e., serving as an expert witness and conducting an engineering inspection were services provided pursuant to the "Additional Services" portion of Swedroe's direct contract. As these services were the only services performed by the Swedroe firm within ninety days of the date the claim of lien was recorded, resolution of this issue turns upon whether providing expert witness services and engineering inspection services were lienable items under the contract.
The record in this case reflects that the subject services were performed at the owner's request (1) in good faith, (2) within a reasonable time, and (3) in pursuance of the contract. Nevertheless, when the expert witness services are viewed in their relationship to the whole contract, and in the context of the mechanic's lien statute, it is evident that these services were not lienable. The assistance of the architect and his firm was sought by the owner in connection with an arbitration proceeding which purportedly would result in the provision of funds to pay all outstanding debts of the project. Although it was contemplated that the expert witness testimony would expedite clearing the property for its intended use, such services were not related to improvement of real property within the intent of section 713.03(1). Furthermore, we find that serving as an expert witness on behalf of the owner in an arbitration proceeding is not a lienable contract item under the "direct contract" provisions of section 713.03(2). Subsection (2) of section 713.03 authorizes an architect who has a direct contract with the owner to place a lien on real property for money due for his professional services, without regard to whether the property is actually improved. Nevertheless, the professional services which would support such lien are those services directed to the ultimate improvement *354 of the subject real property. In contrast, the expert witness services at issue in this case were related to protection of ownership interests. Such services are not entitled to the protection of a lien on the subject real property.
However, we reach a different result with respect to the engineering inspection and report prepared by the Swedroe firm's consulting engineers. The deposition testimony of Mr. Truglio, one of the engineers who performed the inspection services in June 1987, reflects that the inspection was performed at the request of the developer's attorney, and that the purpose of the inspection was to ensure that the finished work was in compliance with the design drawings. We find that this testimony demonstrates the existence of a factual dispute as to whether the June 1987 engineering inspection services and report preparation were related to improvement of the property as contemplated by section 713.03(1) and (2), and are therefore lienable services, or whether these services were performed in support of post-construction arbitration proceedings, and are therefore not lienable. We have not considered the allegations of willful exaggeration of lien, because that issue has not yet been addressed by the trial court.
Accordingly, the order on motion for summary judgment dismissing appellant's claim of lien is reversed, and the cause is remanded for further proceedings.
BOOTH and BARFIELD, JJ., concur.
NOTES
[1] A "direct contract" for purposes of a mechanic's lien is "a contract ... between the owner and any other person." § 713.01(4), Fla. Stat. (1987).