PER CURIAM.
 

 After a nonjury trial, Sam Rodgers Properties, Inc. (SRP), appeals an amended final judgment entered in favor of Linda Lan Chmura in the amount of $355,742.55, plus interest. We affirm the portion of the amended final judgment that complies with our prior mandate in
 
 Chmura v. Sam Rodgers Props., Inc.,
 
 2 So.3d 984 (Fla. 2d DCA 2008), which orders that the previous foreclosure sale and certificate of title be vacated and set aside. However, because we find that there was a legally binding written contract between the parties and both a valid original claim of lien and amended claim of lien, we reverse the award of damages to Mrs. Chmura and remand with directions for the trial court to enter judgment in favor of SRP on its breach of contract and lien foreclosure claims.
 

 I. Facts
 

 This entire case is about a $10,000 dispute in the base contract price to construct a home. SRP is a home builder and the developer of a community called Pelican Pointe Golf & Country Club. In February 2004, Mrs. Chmura signed a set of contracts
 
 [1]
 
 with SRP to purchase lot 31 in Pelican Pointe and to have a house built on
 
 *435
 
 that lot. The parties’ dispute arose over the base price of the house to be built on the lot. However, it is undisputed that Mrs. Chmura signed a contract dated February 28, 2004, to build a “Monterey” model on lot 31 for a base price of $246,700. The trial court was also presented with a copy
 
 [2]
 
 of a second contract dated May 29, 2004, reflecting that Mrs. Chmura agreed to build a “Monterey” on lot 31 for a base price of $256,700, allegedly due to an increase in the model’s base price. To explain the discrepancy between the two contracts, SRP conceded that, at some point after February 2004, the $246,700 price for the Monterey model on lot 31 was “whited out” and changed to $256,700 on the first page of the construction contract.
 
 [3]
 
 Sam Rodgers failed to obtain Mrs. Chmura’s initials or signature on the page that had changed the base price for the house or on any other document specifically acknowledging her consent to the $10,000 increase in the base price. Nevertheless, SRP claimed that Mrs. Chmura orally agreed to the price increase,
 
 [4]
 
 something she vehemently denied.
 

 At trial, Mrs. Chmura claimed she did not realize the base price of the house had been increased without her consent until September or October 2005. Thereafter, she sent letters to SRP questioning the price discrepancy, but she took no affirmative action to cause SRP to halt construction of the house or to repudiate the first contract. It is apparent from Mrs. Chmu-ra’s testimony and the evidence presented at trial that she did not want to terminate the contract; she simply wanted to correct what she perceived to be an error in pricing. During this time frame, she attended preconstruction meetings with SRP’s representatives.
 

 In late January 2006, SRP began construction of a Monterey model on lot 31. After the slab was poured and the roof was dried in, SRP asked Mrs. Chmura to make the next two “draw” payments on the house. Mrs. Chmura did not make the payments, and construction stopped on March 10, 2006, although subcontractors who were in the middle of tasks were allowed to complete those tasks. On April 26, 2006, SRP recorded a claim of lien in the amount of $169,926 for “furnished labor, services, or materials consisting of home construction” that allegedly remained unpaid out of a total of $339,853.
 
 [5]
 
 On June 13, 2006, it filed a lawsuit against Mrs. Chmura asserting claims for construction lien foreclosure and breach of contract. Mrs. Chmura counterclaimed for rescission.
 

 In July 2006, SRP performed additional work on the house, alleging that the work was necessary to protect the structure from the elements. On August 30, 2006, it
 
 *436
 
 recorded an amended claim of lien to reflect these additional sums, totaling an additional $10,213. This amount represented services rendered after the original work had stopped, as well as payment of taxes and insurance on the property. It then amended the complaint to recover these additional amounts.
 

 Subsequently, SRP obtained a final judgment of foreclosure and bought the house and lot at a foreclosure sale. For reasons explained in our prior opinion, this court reversed the final judgment of foreclosure and remanded for a new trial.
 
 Chmura,
 
 2 So.3d at 987.
 

 On remand, SRP proceeded to a second nonjury trial, seeking foreclosure on its claim of lien and damages for breach of contract. Its main argument was that the parties had a valid contract to build a Monterey model on lot 31 for $256,700. The trial court rejected that claim, finding “Exhibit 10, the Contract upon which [SRP] sued[,] was changed by white out. It appeared that the date of the Contract, as well as the purchase price[,] was changed.... It is undisputed that Linda Chmura did not sign the changed Contract.” The trial court also concluded that SRP had begun construction of the house without any valid contract at all, finding that there had been “no meeting of the minds” and “no signed contract to prove otherwise.”
 

 Regarding SRP’s claim for foreclosure of construction liens, the trial court concluded that the amended claim of lien is “void as a matter of law as it was filed 168 days after the last work was performed pursuant to the' [contract.” The trial court found that the additional work reflected in the amended claim of lien was “done to protect [SRP’s] interests, not pursuant to the [c]ontract or for the benefit of Linda Chmura,” after SRP had filed suit to foreclose the original lien. It conclusor-ily found that the amended lien sought to recover for additional work not performed pursuant to the contract and that Mrs. Chmura had suffered “great prejudice.” The trial court therefore found the amended claim of lien fraudulent and unenforceable.
 

 The trial court then: (1) vacated and set aside the foreclosure sale in which SRP had bought the subject property, “unless the parties agree otherwise”;
 
 [6]
 
 and (2) entered judgment in favor of Mrs. Chmura in the amount of $355,742.55, plus interest. It seems that the trial court sought to compensate Mrs. Chmura for construction costs, money she paid to purchase lot 31, and her expenses related to its purchase. The inexplicable effect of this final judgment was to award Mrs. Chmura lot 31, with the partially completed house on it,
 
 and
 
 a money judgment reimbursing her all of the money she paid to buy lot 31 and to construct the partially built house.
 
 [7]
 
 As discussed below, this windfall for Mrs. Chmura is not supported by competent and substantial evidence.
 

 II. Analysis
 

 A. Breach of contract
 

 SRP argues that the final judgment is erroneous because even if the May 2004 contract to build a Monterey model on lot 31 for $256,700 was unenforceable, Mrs. Chmura was still bound by a valid and
 
 *437
 
 enforceable written contract to build a Monterey model on lot 31 for $246,700. Based upon basic contract law, we agree.
 

 To establish breach of a real estate contract, the plaintiff bears the burden of proving by a preponderance of the evidence the existence of a contract, a breach of that contract, and damages resulting from the breach.
 
 See Rollins, Inc. v. Butland,
 
 951 So.2d 860, 876 (Fla. 2d DCA 2006) (citing
 
 Knowles v. C.I.T. Corp.,
 
 346 So.2d 1042, 1043 (Fla. 1st DCA 1977)); 19 Fla. Prac.,
 
 Florida Real Estate
 
 § 24:7 (2010-2011 ed.). Breach of contract requires proof of the parties’ mutual assent, or “meeting of the minds,” on all the essential terms of their agreement.
 
 Leopold v. Kimball Hill Homes Fla., Inc.,
 
 842 So.2d 133, 138 (Fla. 2d DCA 2003) (“[T]he parties ... did in fact have a meeting of the minds as to the essential terms of the contract. Those terms consisted of a specifically identified lot costing $115,000 and a base sales price of $275,000 for a house.... Since the parties did have a meeting of the minds on the essential terms of the contract, the contract was a valid, enforceable contract....”);
 
 Bus. Specialists, Inc. v. Land & Sea Petroleum, Inc.,
 
 25 So.3d 693, 695 (Fla. 4th DCA 2010).
 

 Price is typically an essential element of a contract.
 
 See Acosta v. Dist. Bd. of
 
 TVs.
 
 of Miami-Dade Cmty. Coll.,
 
 905 So.2d 226, 228 (Fla. 3d DCA 2005). The trial court here found that there was no contract between the parties to build a Monterey model on lot 31 at a base price of $256,700, and we conclude that there was competent, substantial evidence to support the trial court’s finding.
 

 But even if the $10,000 base price increase was unenforceable, the trial court erred when it ruled that no enforceable contract existed whatsoever because SRP had begun construction of the house based on a valid contract. It was unrefuted that the initial contract between the parties in the base amount of $246,700 was signed by Mrs. Chmura and was otherwise valid. The parties had a meeting of minds regarding the base price of the house, and at trial, the only disputed issue on the breach of contract claim was whether the base price of the model was increased with Mrs. Chmura’s consent. Mrs. Chmura provided no legal support, and we have found none, for the proposition that if a subsequent contract is not signed, that — in and of itself — legally vitiates a prior valid contract under these circumstances. Because we conclude that there was a binding initial contract, the breach of that contract by Mrs. Chmura entitled SRP to damages, which the trial court must determine on remand.
 
 See generally Shadow Lakes, Inc. v. Cudlipp Constr. & Dev. Co.,
 
 658 So.2d 116, 117 (Fla. 2d DCA 1995);
 
 Puya v. Superior Pools, Spas & Waterfalls, Inc.,
 
 902 So.2d 973, 975-76 (Fla. 4th DCA 2005);
 
 Sampley Enters., Inc. v. Laurilla,
 
 404 So.2d 841, 842 (Fla. 5th DCA 1981). Accordingly, we reverse the trial court’s ruling on the breach of contract claim and remand for entry of a judgment in favor of SRP on that claim in an amount to be determined by the trial court.
 

 B. The claims of lien
 

 Turning now to SRP’s lien foreclosure claim, Mrs. Chmura argued for the first time during trial that the construction liens are fraudulent. The trial court agreed. While we question the trial court’s decision to allow Mrs. Chmura to raise the fraudulent lien issue for the first time midtrial, we conclude that Mrs. Chmura’s claim of fraudulent lien is without merit and that the trial court thus erred in this regard.
 

 
 *438
 
 SRP filed its initial claim of lien on April 26, 2006, for $169,926. After performing additional work on the house in July 2006, it filed an amended claim of lien on August 30, 2006, increasing the amount sought from $169,926 to $180,139. The difference between the two claims represented work done by SRP to protect the partially built house from the elements, animals, and vandals, and also the payment of taxes and insurance on the property. SRP argued that its amended claim of lien was timely filed based on the work performed in July 2006. The trial court, however, concluded that the amended claim of lien was untimely and that it included work not done pursuant to the contract, thereby rendering it fraudulent.
 

 Under section 713.08(5), Florida Statutes (2006), a claim of lien must be recorded no later than ninety days after the “final furnishing” of the labor, services, or material by the lienor. In determining when the “final furnishing” occurred, the question is whether the work claimed in the lien was part of the original contract, so as to consider the lien timely filed.
 
 See Robert M. Swedroe, Architect/Planners, A.I.A., P.A. v. First Am. Inv. Corp.,
 
 565 So.2d 349, 353 (Fla. 1st DCA 1990). Work done in fulfillment of the contract is work contemplated by the contract, and it extends the time for filing the lien because the contract is not complete until the work is done.
 
 Delta Fire Sprinklers, Inc. v. OneBeacon Ins. Co.,
 
 937 So.2d 695, 698 (Fla. 5th DCA 2006). The test for whether work constitutes a “final furnishing” is whether the work was done in good faith, within a reasonable time, pursuant to the terms of the contract, and whether it was necessary to a finished job.
 
 Robert M. Swedroe, Architect/Planners, A.I.A., P.A.,
 
 565 So.2d at 353;
 
 Wolford v. Sapp,
 
 448 So.2d 1113, 1114 (Fla. 1st DCA 1984). However, remedial work such as warranty work, corrective work, repair work, or work that is incidental and not necessary to a completed contract does not extend the time for filing a claim of lien.
 
 See, e.g., Herpel, Inc. v. Straub Capital Corp.,
 
 682 So.2d 661, 663 (Fla. 4th DCA 1996).
 

 Whether work was done pursuant to the contract will depend upon the circumstances of each particular case,
 
 Robert M. Swedroe, Architect/Planners, A.I.A., PA,
 
 565 So.2d at 353, and “[t]here are no steadfast rules to apply in making this determination,”
 
 Michnal v. Palm Coast Dev., Inc.,
 
 842 So.2d 927, 933 (Fla. 4th DCA 2003). Because “[a] construction lien is ‘purely a creature of the statute,’ ” persons seeking its benefits must strictly comply with the requirements of the construction lien statute.
 
 Delta Fire Sprinklers, Inc.,
 
 937 So.2d at 698. However, “[t]he omission of any of the [statutorily required details] or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected by such omission or error.” § 713.08(4)(a).
 

 In rejecting the amended claim of lien, the trial court improperly found that it was filed “to protect [SRP’s] interests, not pursuant to the [c]ontract or for the benefit of Linda Chmura.” Even though factually it is clear that this work benefited Mrs. Chmura as the owner of the property, the trial court improperly focused on who it believed the work was intended to benefit.
 
 See Delta Fire Sprinklers, Inc.,
 
 937 So.2d at 698 (“[W]ork done in actual fulfillment of a contract is contemplated by the contract and, accordingly, extends the time for filing, because the contract is not complete until the work is done.”).
 

 In the final judgment, the trial court specifically found that Sam Rodgers was “an elegant and believable witness.” Mr. Rodgers testified that after he initially
 
 *439
 
 ceased working on the home, he was notified that birds were entering the home. Because the home was exposed to the elements, Sam and Richard Rodgers agreed that the structure needed to be secured. Richard Rodgers testified that the roof, although “dried in” (for draw schedule purposes) was not weatherproof and would be destroyed by the elements if it was not finished. He further testified that the entire structure would have leaked from the side walls because the finished stucco was not complete. In addition, he testified that neither the fascia nor the soffit was installed and without them the untreated wood behind them would have rotted. Additionally, he testified that because none of the doors, including the garage door, were in place, the structure was not secure from either animals or people. All of these items were contemplated by the contract, and all of them were completed in a good faith effort to secure the property and mitigate damages so that a bad situation did not become worse.
 
 See Sys. Components Corp. v. Fla. Dep’t of Transp.,
 
 14 So.3d 967, 982 (Fla.2009) (explaining that a party seeking damages has a duty to mitigate his losses that could have reasonably been avoided). At the time this additional work was done and these expenditures were made, Mrs. Chmura was the owner of the property and therefore directly benefited from these. The trial court’s determination that these items were “not authorized by contract” is unsupported by the evidence.
 

 The amended claim of lien also included amounts paid to keep the property insured ($1800.91) and to pay property taxes ($1634.12). We conclude that these amounts are not lienable. The payment of taxes was not contemplated in the contract.
 
 [8]
 

 See Morris Esher, Inc. v. Olympia Enters., Inc.,
 
 200 So.2d 579, 582 (Fla. 3d DCA 1967). More importantly, both insurance and taxes were paid for the maintenance rather than the improvement of the property.
 
 See Parc Cent. Aventura E. Condo, v. Victoria Grp. Servs., LLC,
 
 54 So.3d 532 (Fla. 3d DCA 2011) (explaining that lien statute protects those who provide labor and materials for the improvement of real property; the statute defines “improvement” as “any building, structure, construction, demolition, excavation, solid-waste removal, landscaping, or any part thereof existing, built, erected, placed, made, or done on land or other real property for its permanent benefit” and, therefore, property maintenance is not lienable).
 

 However, the inclusion of these small amounts in the amended claim of lien did not render it fraudulent. A fraudulent lien is one
 

 in which the lienor has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lien or in which the lienor has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration....
 

 § 713.31(2)(a). But “ ‘a minor mistake or error in a claim of lien, or a good faith dispute as to the amount due does not constitute a willful exaggeration that operates to defeat an otherwise valid lien.’ ”
 
 Sharrard v. Ligon,
 
 892 So.2d 1092, 1096 (Fla. 2d DCA 2004) (quoting § 713.31(2)(b)). Mrs. Chmura bore the burden of persuasion to establish a fraudulent lien,
 
 see In re M.B. Hayes, Inc.,
 
 305
 
 *440
 
 B.R. 361, 366 (Bankr.M.D.Fla.2003), and she failed to meet that burden.
 

 A claim of lien that overstates the amount claimed is not necessarily fraudulent, unless the exaggeration is made willfully.
 
 Sharrard,
 
 892 So.2d at 1097. A lienor’s good or bad faith in filing a lien must be based on competent, substantial record evidence.
 
 Politano v. GPA Const. Grp.,
 
 9 So.3d 15, 16 (Fla. 3d DCA 2008) (citing
 
 Delta Painting, Inc. v. Bau-mann,
 
 710 So.2d 663 (Fla. 3d DCA 1998)). For example, in
 
 Politano
 
 the lienor incorrectly included a claim for overhead and profit.
 
 Id.
 
 The trial court disallowed those charges but concluded that the charges were a mistake and not a willful exaggeration.
 
 Id.
 
 The trial court did not find the lien fraudulent.
 
 Id.
 
 The district court affirmed because the record supported the trial court’s ruling. Based on its findings about the demeanor of witnesses, the trial court had concluded that the lienor did not willfully exaggerate the amount of the lien.
 
 Id.
 

 Here, however, there is no competent, substantial evidence supporting the trial court’s conclusion that SRP willfully exaggerated the claim of lien. For example, the trial court’s conclusion that the lien was fraudulent — which requires a finding of willful exaggeration and lack of good faith — is inconsistent with its finding that Sam Rodgers was an “elegant and believable witness.”
 

 The evidence in this case supports the conclusion that this was simply an error or a good faith dispute as to the amount due. Mrs. Chmura was the legal owner of the property at the time SRP paid the property taxes and insurance, and she remains so today. Clearly, the taxes were paid in good faith to protect the property from the result of unpaid taxes and to mitigate damages to both SRP and Mrs. Chmura. Insurance was also paid in good faith to protect the property. While inclusion of these charges in the claim of lien was erroneous, there is no record evidence these payments were not made in good faith. This was not a claim of lien for work not done or for unjustifiable expenditures.
 
 Cf. Sharrard,
 
 892 So.2d at 1098-99 (holding claim of lien was fraudulent because it included expenses for nonexistent worker’s compensation insurance coverage; contractor did not act in good faith in claiming such expenses in the lien). Nor was this an instance of a contractor grossly inflating or willfully exaggerating the amount of a lien with work or expenses never actually incurred, which would warrant forfeiture of both the valid and invalid lien amounts.
 
 See, e.g., Viyella Co. v. Gomes,
 
 657 So.2d 83 (Fla. 3d DCA 1995) (finding claim of lien fraudulent where a substantial portion of the claimed work had not been completed);
 
 Hobbs Constr. Dev., Inc. v. Presbyterian Homes of the Synod of Fla.,
 
 440 So.2d 673 (Fla. 1st DCA 1983) (holding claim of lien fraudulent because it included large amounts for work not authorized by the contract and based on invalid change orders).
 

 Based on the foregoing we conclude that, while the amended claim of lien in this case included two items that were not lienable, there is no evidence in the record to support the trial court’s finding that it was filed in bad faith.
 
 See Stevens v. Site Developers, Inc.,
 
 584 So.2d 1064, 1064-65 (Fla. 5th DCA 1991) (affirming trial court’s ruling that amounts claimed in lien for lost profits and construction delay were not lienable, but nevertheless concluding that the lien was not fraudulent). Because the trial court’s declaration that the amended lien was fraudulent was not based on any finding of bad faith, the remedy on remand is to excise those amounts from the lien.
 
 See, e.g., Politano,
 
 9 So.3d at 15 (disallowing certain items from a claim of lien);
 
 *441
 

 Stevens,
 
 584 So.2d at 1065 (holding that court may allow lien in amount less than that claimed without finding that the lien is fraudulent). To find otherwise would allow Mrs. Chmura to benefit from a windfall and would punish a party to a contract who seeks in good faith to preserve the status quo and prevent further loss. In addition, the amount claimed for taxes and insurance constituted less than 2 of the total amount claimed in the amended claim of lien.
 

 We now turn to the original claim of lien. Even assuming that the trial court was correct in rejecting the amended claim of lien as untimely filed or that it was for work that was done for the wrong purpose, the trial court erred in determining that the amended claim of lien rendered the initial claim of lien unenforceable. The court in
 
 McCown v. Pierce Construction, Inc.,
 
 552 So.2d 940, 941 (Fla. 4th DCA 1989), held that “when seeking to enforce an untimely amended lien, the lienor may resort to a timely recorded lien, albeit one with errors, if there is no prejudice to the other party.”
 
 See also Johnson Bailey Architects, P.C. v. Se. Brake Corp.,
 
 517 So.2d 776 (Fla. 2d DCA 1988) (reversing trial court’s failure to enforce the original claim of lien even though it contained an omission where there was no showing of prejudice).
 

 Here, it is uncontroverted that the original claim of lien for $169,926 was timely filed and represented work done in accordance with the contract. The trial court made no finding that there was any fault with the substance or timing of the original claim of lien. Most notably, the trial court made no finding that Mrs. Chmura would be prejudiced by the court’s reference to the original claim of lien.
 

 We reverse the trial court’s ruling on the lien foreclosure claim and remand for further proceedings. The trial court shall enter a judgment of foreclosure in the amount of the amended lien, deducting the amounts claimed for property taxes and insurance.
 

 III. Conclusion
 

 We affirm the portion of the final judgment vacating and setting aside the foreclosure sale and certificate of title. We reverse the portions of the final judgment entering judgment in favor of Mrs. Chmu-ra on SRP’s breach of contract and lien foreclosure claims, and we remand for the trial court to enter judgment in favor of SRP on these claims. On remand, the court shall determine damages recoverable by SRP, which shall not include the disputed $10,000 contract amount or the real estate taxes and insurance paid by SRP. Moreover, the trial court must ensure that it does not award duplicative damages under the two separate counts. In light of our disposition, we need not address the other issues raised by SRP.
 

 Affirmed in part, reversed in part, and remanded for further proceedings.
 

 WHATLEY, VILLANTI, and MORRIS, JJ., Concur.
 

 [1]
 

 . The transaction required a sales contract for the lot and a separate contract for the house that would be built on the lot.
 

 [2]
 

 . SRP did not produce the original first page of the altered contract.
 

 [3]
 

 . The circumstances surrounding the execution and alteration of this new contract are much more complex than outlined here and involve the purchase of a second lot, a contract for construction of a home on that second lot, and an alleged "swap” of the contracts for the homes. For purposes of this opinion, however, the details of that additional transaction and the "swap” are not relevant.
 

 [4]
 

 . SRP also argued that Mrs. Chmura signed a "draw” schedule that contained pricing related to the construction contract and that adding the different amounts reflected in that document showed a $10,000 increase in the price of the house. But the document did not specifically state that the base price of the house had been increased by $10,000 and that Mrs. Chmura consented to that increase.
 

 [5]
 

 .This figure is the total cost for the house including the options that Mrs. Chmura selected. The dispute in this case centers on the base price of the house, not the pricing of the additional options.
 

 [6]
 

 . While we question this language in the trial court’s judgment, we take it to mean that the trial court was attempting to accommodate the parties' ability to exercise greater posttrial settlement options should they choose to do so.
 

 [7]
 

 . The parties also disputed the amount the trial court ordered SRP to pay Mrs. Chmura. SRP argued that $355,742.55 was an inaccurate figure. Given our disposition of the case, we need not address that issue.
 

 [8]
 

 . Section 6.B. of the Contract provides that "[t]he Builder will furnish Builder's Risk Insurance in the full amount of this Agreement during the construction period.” Accordingly, SRP was obligated to keep the property insured as a matter of contract.