NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GATOR BORING & TRENCHING, INC., )
)
      Appellant, )
)
v. )    Case No. 2D15-5453
)
WESTRA CONSTRUCTION CORP., a )
Florida corporation; TRAVELERS )
CASUALTY AND SURETY COMPANY )
OF AMERICA, a Connecticut company; )
and TAMPA ELECTRIC COMPANY, )
)
      Appellees. )
_____)

Opinion filed October 5, 2016.

Appeal from the Circuit Court for Sarasota
County; Peter A. Dubensky, Judge.

Charles P. Young of Emmanuel, Sheppard
& Condon, Pensacola, for Appellant.

George E. Spofford, IV, and William F.
McFetridge, IV, of GrayRobinson, PA,
Tampa, for Appellees Westra Construction
Corp. and Travelers Casualty and Surety
Company of America.

No appearance for Appellee Tampa
Electric Company.

WALLACE, Judge.

      Gator Boring & Trenching, Inc. (Gator), seeks appellate review of an

adverse partial summary judgment on claims that it asserted for breach of contract

against Westra Construction Corp. (Westra) and for the recovery on a lien transfer bond against both Westra and its surety, Travelers Casualty and Surety Company of America (Travelers). The issues we are called upon to decide raise complex questions about our jurisdiction and the propriety of the entry of summary judgment in favor of Westra and Travelers on their defense that the lien filed by Gator was fraudulent within the meaning of the Construction Lien Law.[1] We dismiss Gator's appeal in part, reverse the orders granting the partial summary judgment in part, grant certiorari relief, and quash in part the orders under review.

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

Westra contracted with Tampa Electric Company (TECO) to build a fourteen-mile long pipeline in Polk County.[2] Westra subcontracted the horizontal directional drill portion of the project passing under the Alafia River to Gator. When Gator entered into the subcontract, it apparently believed that the scope of the work would require it to drill exclusively or primarily through sand. After commencing the work, Gator found that completion of its portion of the project required it to drill through a substantial amount of rock. The necessity to drill through rock instead of sand substantially increased the cost of the contracted work to Gator. After Gator completed its portion of the project, Westra and TECO did not pay Gator all of the monies that it

---

[1]§§ 713.001-.37, Fla. Stat. (2013).

[2]The facts stated in this opinion are drawn from the pleadings, the answers to interrogatories, the responses to requests for admissions, the affidavits, and the other documents in the record. We examine these facts in the light most favorable to Gator as the party against whom the partial summary judgment was entered. See Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002).

claimed were due.  Gator timely filed a claim of lien in the Public Records of Polk County, Florida.

The total amount of the claim that Gator asserted against Westra and Travelers on its construction lien was $889,792.70.  Of this amount, $676,556.90[3] represented the damages that Gator claimed as a result of the additional costs incurred by it in drilling through the unanticipated rock formation.  The remainder, $213,235.80, was for balances due on invoices and amounts for retainage that Gator claimed were unpaid under its subcontract.

In count I of its first amended complaint, Gator sued Westra for breach of contract based upon Westra's alleged failure to pay Gator for the work it had performed under its subcontract with Westra.  The amount claimed by Gator on its breach of contract claim against Westra was $1,031,869.65.  The amounts sought by Gator for the alleged breach of contract in count I of its complaint included the additional cost of drilling through rock instead of sand as well as other amounts that Gator claimed to be due and unpaid.  A detailed analysis of the additional amounts claimed by Gator on count I is not pertinent to our consideration of the issues in this case.

After Gator filed its lien to secure recovery of the amounts it claimed against Westra and TECO, Westra promptly transferred the lien to a bond underwritten

---

[3]Various pleadings in the record report this amount as $676,556.00. However, we have referred to the amount as $676,556.90 because that is the amount reflected in the trial court's order granting clarification and because that is the amount reflected in Gator's answers to Westra's second interrogatories in which Gator itemized and totaled its additional costs for boring through the unforeseen rock.

by Travelers. In count II of the first amended complaint, Gator sought to recover the $889,792.70 from Westra and Travelers on the lien transfer bond.[4]

Westra and Travelers filed a motion for partial summary judgment on count I and for dismissal of count II of Gator's first amended complaint to the extent that those counts sought damages or relief based upon Westra's failure to pay for the additional work that Gator allegedly performed as a result of the changed conditions at the job site. In the motion, Westra argued that partial summary judgment should be granted on count I because Gator's subcontract precluded Gator from receiving additional money from Westra merely because the work was more difficult and costly than anticipated. Westra asserted that, as a matter of law, Gator accepted the risk of changed site conditions because its contract did not include a changed conditions clause. Furthermore, Westra relied on the provisions in the contract documents that it claimed expressly stated that Gator had investigated the site, accepted the risk that conditions might be different than anticipated, and would not be entitled to additional compensation if the work turned out to be more difficult and costly than expected.

Westra and Travelers raised as their twelfth affirmative defense in their amended affirmative defenses to Gator's first amended complaint their claim that Gator's lien was fraudulent and unenforceable under section 713.31(2), Florida Statutes (2013). Based upon this affirmative defense, Westra and Travelers asserted in their

---

[4]Count III of the first amended complaint alleges an unjust enrichment claim against TECO based upon its alleged receipt of a benefit from Gator's furnishing of labor and materials for the project. Count IV alleges a claim for quantum meruit against TECO on the basis that Gator provided the requested labor and material for the benefit of TECO and that the labor and materials had a reasonable value for which TECO had failed to pay. The orders under review did not address counts III and IV, and those counts are not at issue in this case.

motion for partial summary judgment that count II should be dismissed upon the entry of a judgment on Gator's changed conditions claim in count I. They argued that Gator's lien was fraudulent and unenforceable because the lien included $676,556.90 for the changed conditions claim, for which Gator could not properly recover.

Following a hearing, the trial court entered an order granting the motion for partial summary judgment without elaboration. Thereafter, Gator filed a motion for clarification, pointing out that in the motion for partial summary judgment, Westra sought partial summary judgment on Gator's changed conditions claim, which was included in count I, and that Westra and Travelers sought dismissal of count II based on their claim that Gator's lien was exaggerated as a matter of law. Gator stated that the parties had conflicting interpretations about the effect of the trial court's order and requested that the trial court clarify its ruling.

The trial court entered an order granting the motion for clarification. The order stated that the motion for partial summary judgment was granted based on the argument that Gator could not recover any additional monies on its changed conditions claim. The trial court amended its prior order to include additional findings and rulings as follows: (1) that the subcontract did not include a differing site conditions clause; (2) that Gator assumed the risk of the differing site conditions; (3) that Gator's $889,792.70 lien included a claim for $676,556.90 as compensation for the differing site condition claim; (4) that Gator exaggerated its lien in the amount of $676,556.90 for the claim for differing site conditions, which was not a minor amount; (5) that Gator did not present evidence that it had consulted with legal counsel or disclosed to counsel all material facts before filing the lien; (6) that the lien recorded in the Polk County Public Records

was dismissed; (7) that the clerk was directed to release the lien transfer bond provided by Travelers; and (8) that count II of the amended complaint was dismissed. Gator timely appealed both orders.

## II. THE QUESTION OF JURISDICTION

### A. *Introduction*

The pleadings reflect that the two orders on appeal have effectively disposed of the only claim involving Travelers, which was alleged in count II of the first amended complaint. However, count I includes claims for other damages against Westra in addition to the claim based on the changed site conditions. These claims remain pending. Also, Westra filed a counterclaim under section 713.31(2)(c) for the alleged fraudulent lien against Gator that is unaffected by the orders under review. With these facts concerning the state of the pleadings in mind, we must consider the question of our jurisdiction separately as it relates to the claims asserted against Travelers and Westra.

### B. *Travelers*

Florida Rule of Appellate Procedure 9.110(k) provides as follows:

> Except as otherwise provided herein, partial final judgments are reviewable either on appeal from the partial final judgment or on appeal from the final judgment in the entire case. A partial final judgment, other than one that disposes of an entire case as to any party, is one that disposes of a separate and distinct cause of action that is not interdependent with other pleaded claims. If a partial final judgment totally disposes of an entire case as to any party, it must be appealed within 30 days of rendition.

Because the trial court's orders completely dispose of all claims involving Travelers, we have jurisdiction to review Gator's appeal from the dismissal of count II as a partial final

judgment in accordance with rule 9.110(k). See Behavioral Healthcare Options, Inc. v. Charter Behavioral Health Sys. of Tampa Bay, Inc., 727 So. 2d 1135, 1136 (Fla. 2d DCA 1999) (holding that the dismissal of the claims brought by a professional association against appellees was a final appealable order under rule 9.110(k) because no other counts remained in which the association was a party). Accordingly, we will address the orders dismissing count II in favor of Travelers as a final order on appeal.

## C. Westra

The trial court's orders are nonfinal and nonappealable to the extent that they grant a partial summary judgment in favor of Westra on count I (on the changed conditions claim) and count II because those claims are interrelated with the remaining claims against Westra under count I and Westra's counterclaim for an alleged fraudulent lien. See id. (holding that an order of dismissal as it related to claims that were interrelated with the claims remaining against a party was nonfinal and nonappealable); see also East Ave., LLC v. Insignia Bank, 136 So. 3d 659, 661 (Fla. 2d DCA 2014) (noting same); Merkle v. Home Shopping Network, Inc., 916 So. 2d 841, 843 (Fla. 2d DCA 2005) (noting same). Thus, we must dismiss Gator's appeal to the extent it challenges the trial court's partial summary judgment concluding that Gator cannot recover under count I on its changed conditions claim against Westra as a matter of law.[5]

The analysis concerning Gator's appeal from the trial court's rulings in favor of Westra on count II is more complicated. As noted above, the trial court

---

[5]Because we are dismissing Gator's appeal of the trial court's adverse ruling on the changed conditions claim asserted in count I of the amended complaint, we express no opinion on the merits of that claim.

dismissed count II based upon its finding that Gator had exaggerated its lien by including $676,556.90 in damages alleged on its changed conditions claim that was asserted in count I. In its order, the trial court dismissed Gator's lien, directed the clerk to release the lien transfer bond provided by Travelers, and dismissed count II seeking a recovery against the lien transfer bond.

As noted above, the dismissal of count II in favor of Westra is nonfinal and nonappealable under the traditional rules of finality of judgments because interrelated claims remain pending against or by Westra. However, we conclude that Gator is entitled to certiorari review of this issue because Gator might be subject to irreparable harm if it were required to wait until the end of the litigation to appeal this issue. See East Ave., 136 So. 3d at 661 (granting certiorari review on an appeal from a nonfinal order awarding a partial summary judgment for damages and authorizing execution on the judgment because the appellant would otherwise be "exposed to enforcement of [a] judgment at a time when it cannot obtain review of it [or] . . . shield its assets . . . by posting an appellate supersedeas bond"). If we affirm the trial court's order dismissing count II in favor of Travelers and releasing the bond, Gator would lose the benefit of a recovery under the bond on that claim if we later reversed the dismissal of count II in favor of Westra. In that circumstance, Gator would be without a remedy on the bond. Accordingly, we may review under our certiorari jurisdiction the trial court's dismissal of count II in favor of Westra. See id. at 665; see also Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy.")

## III.  DISCUSSION

### A.  Consideration of the Partial Summary Judgment as to Travelers

Although the trial court stated that it was dismissing count II of the first amended complaint seeking to recover on the lien transfer bond, the trial court actually granted a summary judgment on this count.  The legal analysis of count II involved application of the law to summary judgment facts, not just the allegations in the first amended complaint, and was more like a summary judgment than a dismissal.

> The function of a motion to dismiss a complaint is to raise as a question of law the sufficiency of the facts *alleged* to *state* a cause of action.  For the purpose of passing upon a motion to dismiss the Court must assume all facts alleged in the complaint to be true.  Consequently a motion to dismiss a complaint must be decided on questions of law and questions of law only.
>
> On the other hand a motion for summary judgment . . . raises only questions of [f]act and must be decided upon evidence and not pleadings.
>
> The purpose of a motion to dismiss is to ascertain if the plaintiff has alleged a good cause of action.  The purpose of a motion for summary judgment is to determine if there be sufficient evidence to justify a trial upon the issues made by the pleadings.  They thus serve entirely different functions.

Connolly v. Sebeco, Inc., 89 So. 2d 482, 484 (Fla. 1956).

We review a final order granting summary judgment de novo.  Smith v. Frontier Commc'ns Int'l, Inc., 805 So. 2d 975, 977 (Fla. 2d DCA 2001).  On a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law.  Cerron v. GMAC Mortg., LLC, 93 So. 3d 456, 457 (Fla. 2d DCA 2012).  Until the moving party meets this burden, there is no duty on the nonmoving party to demonstrate the

existence of a genuine issue of material fact.  Smith, 805 So. 2d at 977.  Further, "[i]f the record reflects the existence of any genuine issue of material fact, or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper."  Cook v. Bay Area Renaissance Festival of Largo, Inc., 164 So. 3d 120, 122 (Fla. 2d DCA 2015) (quoting Schmidt v. State Farm Mut. Ins. Co., 750 So. 2d 695, 698 (Fla. 2d DCA 2000)).

With respect to remedies for fraud or collusion in a construction lien, section 713.31 provides, in pertinent part, as follows:

> (2)(a) Any lien asserted under this part in which the lienor has willfully exaggerated the amount for which such lien is claimed . . . or in which the lienor has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.
>
> (b) It is a complete defense to any action to enforce a lien under this part, or against any lien in any action in which the validity of the lien is an issue, that the lien is a fraudulent lien; and the court so finding is empowered to and shall declare the lien unenforceable, and the lienor thereupon forfeits his or her right to any lien on the property upon which he or she sought to impress such fraudulent lien.  However, a minor mistake or error in a claim of lien, or a good faith dispute as to the amount due does not constitute a willful exaggeration that operates to defeat an otherwise valid lien.
>
> (c) An owner against whose interest in real property a fraudulent lien is filed, or any contractor, subcontractor, or sub-subcontractor who suffers damages as a result of the filing of the fraudulent lien, shall have a right of action for damages occasioned thereby.  The action may be instituted independently of any other action, or in connection with a summons to show cause under s. 713.21, or as a counterclaim or cross-claim to any action to enforce or to determine the validity of the lien.

(Emphasis added.)  Thus, under section 713.31(2), "[a] claim of lien that overstates the amount claimed is not necessarily fraudulent, unless the exaggeration [was] made

- 10 -

willfully." Sam Rodgers Props., Inc. v. Chmura, 61 So. 3d 432, 440 (Fla. 2d DCA 2011) (citing Sharrard v. Ligon, 892 So. 2d 1092, 1097 (Fla. 2d DCA 2004)).

The party asserting that a claim of lien is fraudulent bears the burden of proving that the lien is fraudulent. Sam Rodgers Props., 61 So. 3d at 439-40. Further, "a finding of a fraudulent lien by a trial court is not a discretionary matter. As with any other contested issue, the lienor's intent and good or bad faith in filing a lien must be based on competent substantial evidence in the record." Delta Painting, Inc. v. Baumann, 710 So. 2d 663, 664 (Fla. 3d DCA 1998); see also Sam Rodgers Props., 61 So. 3d at 440 (recognizing that "[a] lienor's good or bad faith in filing a lien must be based on competent, substantial record evidence"). Thus, in order to be entitled to summary judgment on count II, Travelers had to establish that there remained no genuine issue of material fact that Gator had willfully overstated the amount claimed in its lien as a matter of law. Travelers failed to meet this burden.

Here, Travelers did not establish the lack of any genuine issue of material fact on its defense that Gator's lien was fraudulent. Rather, Travelers argued, and the trial court accepted, that Gator's lien was fraudulent and unenforceable based upon a misapplication of the law. The sole basis asserted by Travelers for its fraudulent lien defense was that Gator lost on its claim against Westra for additional expenses resulting from its encounter with the unanticipated rock in the path of its drilling operation. Because Gator included an amount for this claim in its lien, Travelers argued, the lien was exaggerated as a matter of law. Travelers did not point to any record evidence to establish that Gator willfully exaggerated its lien by intentionally including amounts that were not recoverable or that it included an amount for changed

- 11 -

site conditions in bad faith. Rather, it argued that because Gator's lien included $676,556.90 on its claim for additional work caused by changed conditions, the trial court's grant of a summary judgment on that claim automatically established that the lien was fraudulent and unenforceable.

In concluding that the lien was fraudulent and unenforceable as a matter of law, the trial court apparently accepted the foregoing argument. It further found that $676,556.90 was not a minor amount when the total amount of the lien was $889,792.70. See § 713.31(2)(b) ("[A] minor mistake or error in a claim of lien . . . does not constitute a willful exaggeration that operates to defeat an otherwise valid lien"). In addition, the trial court observed that "Gator did not present any evidence that Gator consulted with legal counsel and disclosed all material facts to counsel prior to filing the lien." See Sharrard, 892 So. 2d at 1097 (noting that "[a] lienor's consultation with counsel prior to filing a claim of lien tends to establish that the lienor acted in good faith" and "is a factor to be considered along with other pertinent factors").

The reasoning that Gator's lien was fraudulent as a matter of law simply because it lost on its changed conditions claim is erroneous. A "dispute between the parties as to the amount of compensation due according to the contract plan of compensation or even a dispute as to the method of compensation provided in the contract does not convert such a good faith dispute into a fraudulent lien as provided in section 713.31." Vinci Dev. Co. v. Connell, 509 So. 2d 1128, 1132 (Fla. 2d DCA 1987). Moreover, simply because a court reduces the amount of a lien does not render the lien fraudulent. Politano v. GPA Constr. Grp., 9 So. 3d 15, 16 (Fla. 3d DCA 2008); see also Delta Painting, Inc., 710 So. 2d at 665 (Cope, J., dissenting) (observing that "[b]y

- 12 -

eliminating from the fraudulent lien statute good faith contract disputes and minor mistakes or errors, the Legislature intended to reserve fraudulent lien penalties for those cases where there was a willful, intentional exaggeration or assertion of a claim for which there was no good-faith basis. . . . [A] lien is not to be deemed fraudulent merely because it is not embodied in a written contract or change order, so long as there is a good-faith basis for the claim").

The record and the parties' briefs reflect that Gator's claim that it was entitled to recover additional monies from Westra as a result of the changed site conditions was a hotly contested and complex issue involving the legal construction of Gator's subcontract and other documents as well as an analysis of the law concerning the assumption of the risk for differing site conditions. Gator's first amended complaint asserting its claim for damages for the changed site conditions and its claim on the lien transfer bond including those damages was filed by Gator's attorney. Thereafter, the parties engaged in substantial discovery and legal analysis before Westra and Travelers filed their motion for partial summary judgment concerning Gator's entitlement to payment on its changed site conditions claim. Moreover, the trial court did not find that Gator's changed condition claim was frivolous or wholly without merit. The parties' pleadings reflect that they had a genuine dispute about Gator's entitlement to payment on its changed conditions claim, for which Gator was represented by counsel. In addition, the record on appeal reflects that Gator's claim of lien was, in fact, prepared by Gator's counsel.[6]

---

[6]Gator's claim of lien bears the following statement: "This document prepared by: Charles P. Young, Emmanuel, Sheppard, & Condon, 30 South Spring

We conclude that the trial court erred in finding that Travelers was entitled to summary judgment on count II. In their argument on the motion for partial summary judgment on count II, Westra and Travelers relied solely on the ground that a determination by the trial court that Gator was not entitled to recover on its changed conditions claim made Gator's claim of lien fraudulent and unenforceable. This view—which the trial court adopted—is based on an incorrect application of the law. Viewed in the light most favorable to Gator, the record reflects that the parties had a genuine dispute about Gator's right to recover on its changed conditions claim. Travelers failed to conclusively establish that Gator willfully exaggerated the amount of its lien by including that claim. Accordingly, the trial court erred in directing the clerk to release the lien transfer bond and in dismissing count II in favor of Travelers. The question of whether Gator's lien is fraudulent within the meaning of section 713.31 is an issue of fact that remains to be decided at trial. See J.W. Rolle Dev. Corp. v. Neuman, 910 So. 2d 349, 350 (Fla. 4th DCA 2005) (holding that the question of whether a contractor had filed a fraudulent lien by willfully exaggerating the amount was an issue of fact that should not have been determined on summary judgment).

**B. Consideration of the Partial Summary Judgment as to Westra**

Having concluded that Gator is entitled to review by certiorari of the orders to the extent they dismiss count II in favor of Westra, we must determine whether the trial court's ruling constituted a departure from the essential requirements of the law. See East Ave., LLC v. Insignia Bank, 136 So. 3d 659, 665 (Fla. 2d DCA 2014). A

---

Street, Pensacola, FL 32503." Mr. Young filed the first amended complaint on behalf of Gator and represents Gator in this appeal.

departure from the essential requirements of the law means "a violation of a clearly established principle of law resulting in a miscarriage of justice." Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 889 (Fla. 2003). For the reasons discussed above, we conclude that the dismissal of the lien and count II in favor of Westra constituted a departure from the essential requirements of law. The trial court erroneously concluded that its granting of a summary judgment against Gator on its changed conditions claim automatically rendered its lien on that claim (as well as others) to be fraudulent and unenforceable as a matter of law when the record reflects that the parties had a genuine dispute about Gator's entitlement to payment on its changed conditions claim. The law is clearly established that the reduction in the amount of a lien following a good faith dispute about the amount the lienor may recover under a contract does not render the lien fraudulent as a matter of law. See § 713.31(2)(b); see also Politano, 9 So. 3d at 16; Vinci, 509 So. 2d at 1132. Accordingly, we grant certiorari relief and quash the trial court's orders to the extent they dismiss Gator's lien and count II in favor of Westra.

## IV. CONCLUSION

For the foregoing reasons, we dismiss Gator's appeal as nonfinal and nonappealable to the extent that it seeks review of the trial court's orders granting a summary judgment in favor of Westra on Gator's changed conditions claim in count I. We reverse the trial court's orders to the extent they release the lien transfer bond and dismiss count II in favor of Travelers. In addition, we grant certiorari relief to Gator and quash the trial court's orders to the extent they dismiss Gator's lien and claim on the lien transfer bond in count II in favor of Westra.

Dismissed in part, reversed in part, and orders quashed in part.

VILLANTI, C.J., and BLACK, J., Concur.